COLLINS, Respondent, v. FILLINGHAM, Appellant.

St. Louis Court of Appeals, March 3, 1908.

1. **LANDLORD AND TENANT: Covenant to Repair: Personal Injuries.** Where a landlord expressly agreed with a tenant at the time of renting the premises that he would make certain repairs, he is liable for injuries to a child of the tenant caused by the failure to make such repairs.

2. **CONTRIBUTORY NEGLIGENCE: Pleading: Prima-Facie Case.** Contributory negligence is an affirmative defense and must be pleaded by a defendant in an action for damages on account of his negligence in order to be available. Where contributory negligence is not pleaded in defense of an action for personal injuries an instruction on contributory negligence should not be given for defendant unless plaintiff's evidence affirmatively shows plaintiff was guilty of such negligence as would preclude recovery.

3. **PRACTICE: Instruction: Ground Covered.** It is not error to refuse an instruction correctly declaring the law if another instruction is given covering the same ground.

4. **PERSONAL INJURIES: Excessive Verdict.** In an action for personal injuries where the evidence was conflicting as to the extent of the injuries and some of the evidence tended to show an injury to the plaintiff's head to be permanent, affecting the plaintiff's health and mind, a verdict for $1,500 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

AFFIRMED.

*J. A. McKeag* for appellant.

(1)   The verdict is so wholly unsupported by the evidence that it is manifestly the result of passion and prejudice on the part of the jury.   It is one of those unaccountable cases where the jury is moved to its conclusion by some motive not found in the evidence, and in the interest of justice and for the protection of personal rights, the appellate court must consider the evidence.   This is not a case of conflict of evidence but

one of total want of evidence to sustain the verdict. Payne v. Railroad, 136 Mo. 562; Moore v. Hutchinson, 69 Mo. 429; Spiro v. Transit Co., 102 Mo. App. 250; Spohn v. Railroad, 87 Mo. 74; Gage v. Trawick, 94 Mo. App. 307; Cook v. Railroad, 94 Mo. App. 417. (2) Under general denial may be proven any fact the effect of which is to show that an essential statement in plaintiff's cause of action is untrue. Negligence or other act of third person, not agent of defendant, may be shown. It was error, therefore, for the court to exclude evidence offered by defendant tending to show that even if the plaintiff was injured by falling from the roof, such injury was in no way connected with or caused by any act of defendant, but was caused by negligence or other conduct of plaintiff's mother. Bolton v. Railroad, 172 Mo. 92; Cousins v. Railroad, 66 Mo. 572; Young v. Kansas City, 27 Mo. App. 101; Pomroy's Rem. and Rem. Rights (4 Ed.), sec. 551.

*M. Hartmann* and *R. L. Shakelford* for respondent.

There is no merit in defendant's second contention. Contributory negligence is a matter of affirmative defense that must be set up in the pleadings in addition to the general denial filed by defendant. Taylor v. Railroad, 26 Mo. App. 336; Voegeli v. Pickel, 49 Mo. App. 643; Hughes v. Railroad, 127 Mo. 453; Duffy v. Transit Co., 104 Mo. App. 242.

STATEMENT.—In the year 1905, defendant owned premises No. 1809-1811, fronting east on North Ninth street, in the city of St. Louis. Number 1809 is a two-story structure. The first floor is used as a storeroom and the second story is fitted up for residence purposes. Number 1811 is a one-story house with a flat roof. An alley about three feet wide and paved with brick separates the two buildings. Access to the second story of No. 1809 is gained by a narrow stairway built in the west end of the alley. The stairway lands on a porch

running along the north side of the entire building. Doors into the kitchen and other rooms on the second floor open on this porch.    The east end of the porch extends over and on to the flat roof on No. 1811, and the porch and roof are fenced in by a balustrade.  Posts are fastened at the corners of the roof from which the tenant of 1809 may string clothes lines for the purpose of drying clothes.    Birdie Collins, a widow with a family of small children, rented the second story of No. 1809 from defendant, in February, 1905, and moved into the premises about the middle of the month and continued to occupy them until after July of the same year. On July 13th, plaintiff, then eight years of age, fell from the porch running along the north side of No. 1809 to the paved alley, inflicting a deep wound in her head. The action is to recover for this injury and is brought by plaintiff by and through Birdie Collins as her next friend.

The gist of the petition is that the balustrade of the porch was rotten and unsafe when Mrs. Collins moved into the premises and defendant at the time, through his agent, who leased the premises to Mrs. Collins, agreed to make repairs and put the premises in a safe condition, but neglected and refused to repair the balustrade though often requested to do so by Mrs. Collins (the tenant) ; that while plaintiff was playing "I Spy" with other children on the porch and roof, she leaned against the balustrade and, on account of its rotten and unsafe condition, it gave way causing her to fall to the alley, resulting in serious and permanent injury to her.    The answer admitted that defendant was the owner of the premises and that Mrs. Collins occupied them as his tenant, but denied every other allegation in the petition. The jury found the issues for plaintiff and assessed her damages at $1,500.    After taking the necessary preliminary steps to preserve his exceptions defendant appealed.

BLAND, P. J. (after stating the facts).—1.   At the close of all the evidence defendant moved the court to instruct the jury to find for him.   The refusal to give this instruction is assigned as error.   Plaintiff's evidence shows that she fell from near the east end of the porch to the paved alley and was seriously injured; that two pieces of the balustrade were picked up in the alley where plaintiff fell and were found to be so rotten and decayed that they had pulled from the nails.   Mrs. Collins testified that defendant's agent having the property in charge, and who rented the premises to her, agreed at the time to repair the balustrade of the porch and put the premises in good condition before she moved in; that some repairs were made to the locks and doors in the kitchen and some window glass put in, but no repairs whatever were made to the balustrade of the porch.   She also testified that on the payment of each monthly installment of rent, up to and including June, 1905, she verbally notified defendant's agent of the unsafe condition of the balustrade and requested that it be repaired and, at the agent's request, she gave them written notice of the unsafe condition of the balustrade and requested repairs, but that no heed was paid to her complaint and no repairs made.   Defendant's evidence tends to show that in January, 1905, and before Mrs. Collins moved into the premises, they were thoroughly overhauled by a carpenter employed by defendant and the premises including the balustrade, were put in a good tenantable condition.   The carpenter who made the repairs testified that he left the balustrade in a safe condition and that he removed all rotten boards therefrom and put in new ones.   Defendant's evidence also tends to show that Mrs. Collins at no time, either verbally or in writing, made any complaint of the condition of the balustrade, or notified defendant or his agent to repair it.   Defendant contends that he was under no obligation to Mrs. Collins to make repairs.

This might be so but for plaintiff's evidence tending to show that the landlord, through his agent, expressly agreed to make repairs at the time of letting the premises to Mrs. Collins.    An express covenant to make repairs is binding on the landlord (1 Wood on Landlord & Tenant, pp. 790-91), and we think plaintiff made a prima-facie case; if so then the court did not err in refusing to take the case from the jury.

2.    Plaintiff's evidence shows that she and other children were playing "I Spy" on the porch and roof at the time she fell and was injured, and that Mrs. Collins knew plaintiff and other children were in the habit of playing on the porch and roof.    On this evidence defendant asked the following instruction, which the court refused:

"1. , The court instructs the jury that if you believe and find from the evidence that plaintiff's mother occupied a part of the premises described in the petition, and used the balcony mentioned in the petition for domestic purposes and for a play yard for her children, and that plaintiff's mother was in close proximity with the guard or rail, mentioned in the petition as being defective, practically every day; and if you believe and find from the evidence that said guard or rail was defective, and the defect in the same could have been discovered by plaintiff's mother by the exercise of ordinary care on her part, and if you believe and find from the evidence that she did not discover any such defect, or, if she did discover such defect, she nevertheless permitted plaintiff to climb on or lean against said railing then plaintiff's mother was guilty of contributory negligence and you will find for defendant."

Contributory negligence was not pleaded in the answer, and for this reason was not available as a defense to the action, unless plaintiff's evidence shows affirmatively that Mrs. Collins was guilty of negligence which directly contributed to her daughter's injury. Mrs.

Collins' evidence shows she knew the balustrade was out of repair, but there is no evidence that she knew the extent of the decay, or that it was so rotten it would likely give way under the weight of a small child, or that she apprehended it was dangerous for small children to play on the porch; hence we do not think the evidence shows affirmatively that Mrs. Collins was guilty of such contributory negligence as to preclude a recovery.

3. Defendant assigns as error the refusal of the court to give his refused instruction No. 2. The refused instruction is but a repetition, in a condensed form, of the following instruction given by the court for defendant:

"3. The court instructs the jury that the defendant as the owner of the property mentioned in the petition was responsible for reasonable care in keeping it in safe condition, and if you believe and find from the evidence that defendant did within five or six months previous to July 13, 1905, employ a competent mechanic and did supply him with suitable material and instruct him to repair the guard or rail mentioned in plaintiff's petition, and if you believe and find from the evidence that said mechanic did use said material, and did therewith with reasonable care repair and strengthen said guard or rail, and that thereafter, prior to said July 13, 1905, said guard or rail was subject to only the ordinary wear, it is for the jury to determine whether such conduct on the part of the defendant was the exercise of reasonable care, and if you believe and find from the evidence that it was reasonable care on his part, and that neither the defendant nor his agent had actual knowledge of any defect in said guard or rail, you will find for the defendant. By reasonable care, as used in this instruction, is meant the ordinary care that a prudent man would exercise in looking after property of the kind mentioned in the petition having

due regard for the purpose for which it was to be used."

There was no occasion to repeat this instruction to the jury.

4. It is finally contended that the verdict is so excessive as to show the jury was influenced by passion or prejudice. Mrs. Collins testified that before the injury plaintiff was a strong, healthy, bright child; that after the injury she was stupid, listless, and nervous, frequently complained of headaches and had falling spells. Dr. Schuchot testified he treated plaintiff after the wound on her head had healed; that she seemed very reticent, did not answer questions and had a vacant look when any one spoke to her, did not seem to be a bright child and was extremely nervous; that he had no doubt there was some injury to her brain, "probably the covering of the brain may have been torn, or a fracture that at the time of the injury was not observable;" that various results follow such an injury, including the falling spells testified to by the mother (not seen by the doctor) which resemble a mild type of epilepsy; that it was probable as plaintiff grew older and into girlhood the attacks would become more pronounced and, in his judgment, the injury is permanent. There is a great deal of countervailing evidence. Dr. H. C. Church, who saw plaintiff in a few minutes after she fell, testified that he probed the wound in her head, examined it thoroughly, and it was only a flesh wound; that there were no fractures to the bones or rupture of the brain covering, and that plaintiff had entirely recovered when he discharged her as his patient; that the falling spells, stupor, etc., testified to by Mrs. Collins could or may have resulted from an ordinary case of diptheria plaintiff had after her injury. Defendant also introduced evidence tending to show that Mrs. Collins plied her daughter with beer, made her drink great quantities of it; that she beat the child unmercifully and the stupor and nervousness may have been

the result of drink and abuse. Plaintiff denied all of this evidence. If the jury accepted Dr. Schuchot's evidence as the correct diagnosis of the case, and they had a right to do this, then the verdict is not excessive, but on the contrary is very moderate; and we do not think there is anything in the record to indicate that the jury was influenced by passion or prejudice, but rather that they believed plaintiff's evidence and rejected that of defendant. We think the case was well tried and correctly instructed. We discover no error in the record and affirm the judgment. All concur.