[No. 2017]

# WILLIAM KONIG, RESPONDENT, *v.* THE NEVADA–CALIFORNIA–OREGON RAILWAY (A CORPORATION), APPELLANT.

1. APPEAL AND ERROR—NOTICE OF APPEAL—FILING AND SERVICE.

Where it appeared that a copy of notice of appeal was served on the attorneys for the respondent on the same day that the original notice was filed with the clerk, it would be presumed, in the absence of proof to the contrary, that the filing preceded the service.

2. APPEAL AND ERROR—NOTICE OF APPEAL—FILING AND SERVICE.

The indorsements and the file marks on the original notice of appeal filed with the clerk of the court were no part of the notice, and a failure to include them in the copy served on the adverse party did not affect its validity.

3. APPEAL AND ERROR—MOTIONS TO DISMISS—EVIDENCE.

Where, on a motion to dismiss an appeal on the ground that the copy of the notice of appeal was served on the respondent before the filing of the original, it appeared that the filing and service were on the same day, and the affidavit of respondent's counsel that the original was filed after the service of the copy was apparently based upon the assumption that the copy should have included a copy of the indorsements on the original, contained no facts showing any particular knowledge of the order of filing and service, other than that gained from the documents, and was contradicted by the affidavit of the appellant's attorney that the filing preceded the service, the presumption that they were filed in regular order was not overcome.

4. APPEAL AND ERROR — UNDERTAKING — EXCEPTIONS TO SURETIES — NOTICE.

While Comp. Laws, 3443, providing that the adverse party may except to the sufficiency of the sureties in an undertaking on appeal, does not require such party to serve notice of his exceptions upon the appellant, the appellant is entitled to such notice, in view of district court rule 10, providing that motions, except *ex parte* motions, etc., shall be noticed at least five days before the day specified for a hearing.

5. APPEAL AND ERROR—UNDERTAKING—EXCEPTIONS TO SURETIES—REQUISITES AND SUFFICIENCY.

Comp. Laws, 3443, provides that the adverse party may except to the sufficiency of the sureties in an undertaking on appeal, and that unless they or other sureties justify before the judge or clerk the appeal shall be regarded as if no such undertaking had been given. Section 3699 provides that, where sureties are required to justify, they shall appear before the

officer or person authorized to take the justification, and may
be examined under oath touching their qualifications as sure-
ties. The act of March 26, 1909, sec. 5 (Rev. Laws, 698), pro-
vides relative to the justification by a surety company that a
certificate of the secretary of state, showing that such com-
pany is authorized to do business in the state, shall be *prima
facie* evidence of all matters therein stated, that any printed
copy of a circular issued by the United States treasury depart-
ment, stating the amount of the capital and surplus of any
such company, shall be *prima facie* evidence of the amount of
such capital and surplus, and that, if accompanied with the
certificate of the secretary of state, it shall be a complete jus-
tification for any amount not exceeding 10 per centum of the
capital and surplus. *Held*, that an instrument excepting to the
sufficiency of the surety on an undertaking on appeal, and
asking that such surety appear before the judge and justify
as required by section 3443, although probably sufficient where
personal sureties are given, was not a sufficient exception
where the undertaking was executed by a surety company;
section 698 having provided an entirely different method for
the justification of such companies.

6. NEGLIGENCE—PLEADING—NEGATIVING CONTRIBUTORY NEGLIGENCE.
    In an action for damages for personal injuries, contributory
negligence is a matter of defense, and plaintiff need not allege
that the injury was caused without his fault, unless in stating
his cause of action he details facts disclosing *prima facie* that
he was guilty of contributory negligence or that his acts were
the proximate cause of the injury, in which case he must
allege that the injuries occurred without his fault.

7. NEGLIGENCE—PLEADING—CONTRIBUTORY NEGLIGENCE—ISSUES.
    Contributory negligence must be specially pleaded as an
affirmative defense, and cannot be proved under a general
denial, and a denial that plaintiff was exercising ordinary care
and diligence, or any care and diligence, or that he was without
fault or negligence, as unnecessarily alleged by him, did not
raise such issue.

8. NEGLIGENCE—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.
    Where plaintiff's evidence shows contributory negligence
without dispute, or so conclusively that the court, in the exer-
cise of sound judicial discretion, would be compelled to set
aside a verdict for plaintiff, a verdict for defendant should be
directed; but where it only tends to show contributory negli-
gence, or only raises an inference thereof, the question should
be submitted to the jury.

9. NEGLIGENCE—ACTIONS FOR INJURIES—CONTRIBUTORY NEGLIGENCE.
    Where plaintiff's evidence discloses contributory negligence,
defendant may take advantage thereof by a motion for a non-
suit or a directed verdict, or in the argument to the jury, even
though contributory negligence has not been pleaded; but if
plaintiff's evidence does not show contributory negligence as
a matter of law, defendant cannot introduce additional evidence
to show such negligence.

10. MASTER AND SERVANT — LIABILITY FOR INJURIES — PROXIMATE CAUSE.

The ripsaw operated by plaintiff had become dished and would not run straight, as a result of which the material which was being sawed had a tendency to jump away from the saw. While plaintiff was sawing a buffer block, the saw started to buckle and tried to throw the block off. Plaintiff tried to push the block through, whereupon the saw pulled it from his hand, throwing it against him and injuring him. *Held*, that the defect in the saw, and not plaintiff's act in attempting to force the block against it, was the proximate cause of the accident.

11. NEGLIGENCE—LIABILITY—PROXIMATE CAUSE.

Where the first wrong done is the probable cause of an injury or accident, and the final injurious consequences are such as might have been foreseen, the consequence, as well as every intervening result, is the proximate result of the first wrongful cause.

12. NEGLIGENCE—LIABILITY—PROXIMATE CAUSE.

Where a new cause intervenes between the first wrongful cause and the final injurious consequences, which is not under the control of the first wrongdoer, and which he could not with reasonable diligence have foreseen, and except for which the final catastrophe could not have happened, the final result is too remote to furnish the basis of an action.

13. MASTER AND SERVANT — ACTIONS FOR INJURIES — QUESTIONS FOR JURY.

In an employee's action for injuries caused by a ripsaw binding and heating, and throwing the block which he was sawing against him, evidence *held* to make a question for the jury as to whether he was negligent in attempting to push the block through, instead of drawing it back or turning off the power.

14. NEGLIGENCE—LIABILITY—PROXIMATE CAUSE.

Where a succession of events are so linked together as to make a natural whole, and all so connected with the first event as to be in legal contemplation the natural result thereof, the first negligent act is the proximate cause of the resulting catastrophe, although there may be intervening agencies, one of which is the act of the party injured.

15. MASTER AND SERVANT—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

An employee cannot recover for injuries brought about by his own negligence in performing an act, the danger of which was so obvious and threatening that a reasonably prudent man under similar circumstances would have avoided them, if in his power to do so; he being deemed to have assumed the risks involved in such a reckless exposure of himself to danger.

16. MASTER AND SERVANT—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

In determining whether an employee recklessly exposed himself to danger, or exercised the care that a prudent person

Points decided

would exercise for his own personal safety, the imperfections of human reasoning and the peculiar conditions surrounding each particular case and each particular individual must be given consideration.

17. MASTER AND SERVANT — LIABILITY FOR INJURIES — CONTRIBUTORY NEGLIGENCE.

An employee is only required to exercise ordinary, and not extraordinary, diligence for his own safety.

18. MASTER AND SERVANT — ACTIONS FOR INJURIES — QUESTIONS FOR JURY.

In an employee's action for injuries caused by the defective condition of the saw which he was operating, evidence *held* to make a question for the jury as to whether the defect had been called to the employer's attention.

19. MASTER AND SERVANT—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

Where an employee, noting a defect in machinery, complains thereof to the employer, who promises to remedy the defect, the employee, in reliance upon such promise, may continue in the service for a reasonable time without assuming the risk, unless the danger is so imminent and immediate that a person of ordinary prudence would refuse to continue in the service; but continuance in the service for a period of time beyond which it would be reasonable to expect that the promise would be kept defeats the employer's liability.

20. MASTER AND SERVANT — ACTIONS FOR INJURIES — QUESTIONS FOR JURY.

In an employee's action for injuries caused by the dished condition of a ripsaw, evidence *held* sufficient to make a question for the jury as to whether the danger from such condition was so imminent and immediate that a reasonably prudent man should have refused to continue in the service in reliance on the employer's promise to repair.

21. MASTER AND SERVANT — ACTIONS FOR INJURIES — QUESTIONS FOR JURY.

In an employee's action for injuries caused by a defective ripsaw which he was operating, evidence *held* sufficient to make a question for the jury as to whether it was his duty to set and file the saws used by him.

22. MASTER AND SERVANT — LIABILITY FOR INJURIES — DEFECTIVE MACHINERY.

An employer, whose attention had been drawn to a defect in a machine operated by an employee, could not avoid the obligation to repair the defect by any rule imposing the duty of repair on the employee.

23. EVIDENCE—OPINION EVIDENCE—USURPING FUNCTIONS OF JURY.

In an employee's action for injuries caused by defects in a saw, witnesses could testify as to its condition and the circumstances which came under their observation, but could not draw inferences and conclusions as to the danger or safety; these matters being for the jury.

24. MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE — ACTS OF THIRD PERSONS.

Contributory negligence on the part of an employee could not be proved by testimony as to what other persons did, might do, or were in the habit of doing under like conditions.

25. MASTER AND SERVANT — ACTIONS FOR INJURIES — QUESTIONS FOR JURY.

In an action for injuries claimed to have been caused by a defective ripsaw binding and heating, and throwing the block which plaintiff was sawing against him, evidence *held* sufficient to make a question for the jury as to whether the accident occurred in the manner claimed.

26. MASTER AND SERVANT—LIABILITY FOR INJURIES—APPLIANCES AND PLACES TO WORK.

An employer is only required to exercise reasonable care to furnish an employee a reasonably safe place in which to work and reasonably safe appliances with which to work, and to maintain this condition.

27. MASTER AND SERVANT—TRIAL—ACTIONS FOR INJURIES—INSTRUCTIONS.

An instruction that it was the duty of an employer to use due care in providing an employee with safe machinery and in keeping and maintaining the machinery in such condition as to be reasonably and adequately safe for use was not erroneous, as requiring the employer to do more than to exercise reasonable care to furnish reasonably safe appliances, especially in view of a further instruction that an employer was not required to use more than ordinary care and diligence for the protection of employees, that he was not bound to provide the very best materials, implements, or accommodations which could be procured, nor those which are absolutely the most convenient or most safe, that his duty was sufficiently discharged by providing those which were reasonably safe and fit, and that he performed his whole duty by using as much care in furnishing instrumentalities for the use of his servants as a man of ordinary prudence in the same line of business, acting with a prudent regard for his own safety, would do in supplying similar things for himself, if he were doing the work.

28. MASTER AND SERVANT—ACTIONS FOR INJURIES—INSTRUCTIONS.

An instruction that if a servant, having the right to abandon the service, refrained from doing so in consequence of assurances that a danger would be removed, such assurance removed all ground for the argument that the servant, by continuing in the employment, engaged to assume the risks, was too narrow, since it failed to take into consideration the period of time during which the servant might reasonably rely on the promise to repair, and failed to make any mention of the servant's duty, where he knew that an accident was liable to occur.

29. TRIAL—INSTRUCTIONS—CURE OF DEFECTS.

An instruction that an assurance by an employer that a danger would be remedied removed all ground for the argument that the employee by continuing in the employment

engaged to assume the risk, was cured by other instructions that under such conditions the employee might continue in the service without assuming the risk, provided the danger was not of so imminent a character that a person of ordinary prudence would refuse to continue in the service, and that, where an employer had expressly promised to repair a defect, the employee could recover for an injury occurring by reason thereof, within such period of time after the promise as it would be reasonable to allow for its performance.

30. MASTER AND SERVANT—ACTIONS FOR INJURIES—INSTRUCTIONS— "RECKLESS."

In an employee's action for injuries, an instruction that it was for the jury to determine whether a defect in a saw was such that no one but a reckless millman, careless of his safety, would have operated it without it being repaired, was not objectionable because of the use of the word "reckless," as the court might have used the word "heedless," "careless," or "indifferent" with the same force and effect.

31. MASTER AND SERVANT—ACTIONS FOR INJURIES—INSTRUCTIONS— BURDEN OF PROOF.

In an employee's action for injuries, where defendant failed to plead contributory negligence or assumed risk, and therefore could rely thereon only so far as they might appear from plaintiff's case, an instruction that, where defendant relied on the defense that plaintiff assumed the risk by reason of the ripsaw operated by plaintiff being so imminently and immediately dangerous that a reasonably prudent person, situated as the plaintiff was, would not have used it, this was an affirmative defense, the burden of establishing which by a preponderance of the evidence rested on the defendant, was sufficient so far as it went, although the court might properly have stated that if it appeared that plaintiff was the proximate cause of his own injuries, and had so conducted himself as to assume the risk, defendant was entitled to take advantage of that fact.

32. DAMAGES —ACTIONS FOR INJURIES — INSTRUCTIONS —AMOUNT OF DAMAGES.

In an employee's action for injuries, it was not error to charge that, if the jury found for plaintiff, they should assess his damages at a sum not greater than that claimed in the complaint; this not obligating the jury to find a verdict in that specific amount.

33. MASTER AND SERVANT — ACTIONS FOR INJURIES — EVIDENCE — ASSUMPTION OF RISK.

The facts that a ripsaw used by an employee was in a defective condition, which was known to the employee up to and including the time of the injury, and that he was injured as a result of the defective condition, did not in themselves prove that the ripsaw was so openly and obviously dangerous that a reasonably prudent person would not have used it.

34. TRIAL—INSTRUCTIONS—ASSUMING FACTS.

In an employee's action for injuries, an instruction that the mere facts that prior to the injury the ripsaw used by him was in a defective condition, which was known to him up to and including the time of the injury, and that he was actually injured as a result of such defective condition, did not in themselves establish that the ripsaw was so openly and obviously dangerous on account of such defects that a reasonably prudent person would not have used it, was not erroneous or misleading, as assuming the facts therein stated to have been proved or admitted.

35. TRIAL—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.

An instruction that the jury were at liberty to and should take into consideration all of the facts and circumstances surrounding the testimony of the witnesses in determining the weight, credit, and value to be given such testimony, that if their statements were contradicted by other witnesses the jury should give their testimony only such credit as they might believe it was entitled to under all the circumstances detailed in evidence, and that if they believed that any witness had wilfully sworn falsely to any material fact they might disregard the whole or any part of such witness's testimony, "except in so far as the same is corroborated by some other credible witness or witnesses," was not erroneous, notwithstanding the failure of the quoted portion to take into account circumstantial evidence, or the circumstantial features of the case; the first part of the instruction having taken these elements into consideration.

36. NEGLIGENCE—ACTIONS FOR INJURIES—INSTRUCTIONS.

In an employee's action for injuries, an instruction that "negligence" was the want of such attention to the nature or the probable consequence of an act or omission as a reasonably prudent person ordinarily bestowed in acting in his concerns of like importance, although it might have been differently worded, was not erroneous or misleading, or open to the construction that, if plaintiff's injuries were the consequence of defendant's omission, then a want of attention to such injuries constituted negligence.

37. MASTER AND SERVANT—ACTIONS FOR INJURIES—INSTRUCTIONS— "ORDINARY CARE."

In an employee's action for injuries, an instruction defining "ordinary care" as such care as a person of ordinary prudence usually exercised about his own affairs of ordinary importance was correct in the abstract and not misleading.

38. MASTER AND SERVANT —ACTIONS FOR INJURIES — INSTRUCTIONS— "RISKS INCIDENT TO THE EMPLOYMENT."

In an employee's action for injuries, an instruction that by "risks incident to the employment" was meant such risks as existed after the master had performed his full duty to his servant in furnishing instrumentalities, machinery, and appliances reasonably safe for the purpose for which they were

intended, that this included keeping them in reasonably safe repair, that by the assumption of risk incident to the employment was not meant any additional or extra hazard, occasioned by the master's negligence in failing to keep his tools, machinery, and appliances in reasonably safe repair, was not erroneous or misleading.

39. TRIAL—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.

It was not error to refuse an instruction, the subject-matter of which was covered by an instruction given.

40. MASTER AND SERVANT — ACTIONS FOR INJURIES — PLEADING — ASSUMPTION OF RISK.

In an employee's action for injuries, assumed risk, if relied upon by defendant, must be specially pleaded.

41. DAMAGES—EXCESSIVENESS—PERSONAL INJURIES.

In an action for injuries to an employee 58 or 59 years old, who prior to the injury was earning between $80 and $90 a month, it appeared that the injuries were of a severe and painful nature, permanently affecting one side of his body and depriving him of the use of one arm, but it did not appear that he would be entirely deprived of ability to enter into lines of employment involving less laborious tasks than his former employment. It also appeared that he had suffered from malarial fever, pneumonia, and cerebro-spinal fever, verging on cerebro-spinal meningitis, which might or might not materially affect his expectancy of life. A physician's testimony that in his opinion a man in plaintiff's condition prior to the accident could perform labor for at least ten years longer was uncontradicted. *Held,* that a verdict for $15,000 was excessive, and required a new trial, unless plaintiff would consent to a modification of the judgment to $10,000.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by William Konig against the Nevada-California-Oregon Railway. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Heard on motion to dismiss the appeal and on the merits. Motion denied, and judgment and order reversed, and new trial granted, unless plaintiff consents to a modification of the judgment. Consent filed and judgment affirmed as modified.

The facts sufficiently appear in the opinion.

*James Glynn,* and *Mack, Green, Brown & Heer,* for Appellant:

Plaintiff's complaint shows that the act of the plaintiff was the proximate cause of the injury. (*Longabaugh*

*Case,* 9 Nev. 294: *Edgar* v. *Rio Grande Co.,* 11 L. R. A. n.s. 739; *Kreigh* v. *Westinghouse,* 11 L. R. A. n.s. 684; *Milwaukee and St. Paul R. R.* v. *Kellogg,* 94 U. S. 469; Thompson Neg. vol. 1, sec. 50, 57, 2d ed. and cases cited.).

Regardless of whether the act of plaintiff was, or was not, the proximate cause of the injury, having alleged in his complaint "that he was exercising ordinary care and diligence, and was without fault or negligence, and without any carelessness or negligence on his part," the denial thereof in the answer raised an issue of contributory negligence. (*Watkind* v. *S. P. Ry.,* 4 L. R. A. 239; *Berry* v. *Lake Erie,* 170 Fed. 193.)

Under the facts in this case as shown by the complaint it was necessary to allege freedom from contributory negligence. (*Badovinac* v. *N. P. Ry. Co.,* 104 Pac. 543; *Schroeder* v. *Montana Iron Works,* 100 Pac. 619; 29 Cyc. 575, 576, and cases cited; Wharton on Negligence, 2d ed. sec. 426.)

Even though no issue is raised by the pleadings, if the testimony on direct or cross-examination raises a presumption of contributory negligence, an instruction on contributory negligence is proper.

Plaintiff pleads in his complaint the happening of a physical impossibility and testifies fully to the same. Plaintiff testified, in accordance with the complaint, that the block had passed the saw before the saw caught it. Facts which are axiomatic in character, or such as are so universally accepted as to be part of the common knowledge of mankind, are required to be judicially noticed by the court. (*Hunter* v. *N. L. R. Co.,* 6 L. R. A. 246; *Rogers* v. *Cady,* 104 Cal. 288, 43 Am. St. 100; 16 Cyc. 852; *French* v. *State Senate,* 146 Cal. 604, 69 L. R. A. 556; *Mullen* v. *State,* 114 Cal. 578, 34 L. R. A. 262; *Edsen* v. *S. P. Ry.,* 144 Cal. 182.)

Plaintiff's instructions given (No. 1, No. 4, No. 4a, and No. 4b) are erroneous. Plaintiff's instruction No. 5 is erroneous. Nowhere in this instruction is the jury directed to a consideration of the evidence, nor does the word evidence appear in the instruction. The

direction given is to return a verdict according to their judgment for alleged injuries. This is an example of the "roving commission to find such damages as they please" spoken of in volume 4, Sedgwick on Damages, 9th ed. (1912) sec. 1320a, and held erroneous in *Lexington Ry. Co.* v. *Herring,* 97 S.W. 1127 (Ky.); *Camp.* v. *Wabash R. Co.,* 68 S. W. 96 (Mo.). Plaintiff's instruction No. 6 assumes facts as proven, and informs the jury what the assumed facts do not establish.

Instructions should not intimate that any fact is either proven or disproven which is controverted. The jury should not be instructed in words or by intimation as to what inference should or should not be drawn by them from any testimony given in the case.

Under the testimony given by plaintiff in this case the standard of ordinary care given in this instruction (No. 9) is erroneous. The true rule is stated in *Solen* v. *V. & T. R. R. Co.,* 13 Nev. 106; Beach on Con. Neg. 3d ed. sec. 21; Bailey, Personal Injuries, 2d ed. p. 17.

"A protest and promise to repair may be shown, and the servant may yet be guilty of contributory negligence in using a dangerous and defective machine." (*Green* v. *Cross,* 79 Tex. 132; *Railway Co.* v. *Sommers,* 14 S. W. 779; *Ry. Co.* v. *Bryant,* 27 S. W. 825; *Texas and N. O. R. Co.* v. *Bingle,* 29 S. W. 674.)

*Parker & Frame,* for Respondent:

The undertaking was made by a surety company. The points made on the bond are:

First, there was no showing made that the surety company making this bond was qualified to transact any business in this state, or to make this bond. Second, the bond was never presented to or approved by the judge of the lower court who tried the case. Third, the failure of the surety company to justify after its sufficiency had been excepted to. Fourth, the bond is void for uncertainty.

An examination of the statutes (Stats. 1903, p. 63, and Stats. 1909, p. 315) clearly shows that an appeal bond made by a surety company is to be presented to,

and approved by, the trial judge. When the bond is so presented there are two things that must be shown. One is that the surety company has complied with the laws of this state so as to be qualified to transact business at all; the other is, Has it made a bond that is satisfactory in the particular case?

We maintain that under the statutes this bond should have been presented to the trial judge, and when so presented it should have been made to appear to the satisfaction of the trial judge that under the charter of this company it had the power to make bonds on appeal. It should have been further made to appear that this surety company had fully complied with the laws of the State of Nevada. And it should have been made to further appear that this company was financially able to make a bond in this amount. (*Dodge* v. *Corliss*, 68 Pac. 177.)

From the language of the statute it is apparent that it was the intention of the legislature that surety companies were required under the law to justify whenever the sufficiency of the said surety was excepted to, just the same as a private person. (Stats. 1909, p. 315; *Fox* v. *Hale & Norcross*, 32 Pac. 446.)

Appellant cannot urge with any degree of consistency that this verdict is excessive, when they never made any effort whatever to show that Konig was not permanently and seriously injured. The very fact that they did not put the railroad doctor on the stand to testify as to the extent of the injuries of the plaintiff, is a very strong circumstance going to show that the injury and damage of the plaintiff was very serious and permanent.

The issue to be tried by the jury was whether or not the plaintiff while using the saw noted the fact that it was out of repair, and whether or not the plaintiff reported this defective condition to the master mechanic, and whether or not the master mechanic promised to have the defect remedied and the saw repaired, and whether or not the plaintiff relied upon this promise and continued to use the saw, and whether or not the plaintiff was injured and damaged while using the saw in its

defective condition by reason of said defects. (*Kirman* v. *Gilman*, 2 Pac. 224; *Taylor* v. *N. C. O. Ry.*, 26 Nev. 415.)

Appellant says that the answer denies "that at the time of the alleged injury plaintiff was exercising ordinary care and diligence or any care and diligence, and denies that plaintiff was without fault or negligence on his part."

In regard to this we will quote from one of appellant's own authorities: "While such a denial of a negative is objectionable, it must be held sufficient, unless objection thereto is made in the lower court." (*Smock* v. *Railway Co.*, 48 Pac. 681–683.) But all the evidence offered by the appellant attempting to show contributory negligence was objected to, all through this case. In fact, about sixty-five errors were assigned in the lower court, because the objections of the plaintiff to the introduction of expert testimony for this purpose were sustained by the court.

By the Court, McCARRAN, J.:

This is an action wherein William Konig, plaintiff and respondent, brought suit in the Second judicial district court against the appellant herein, Nevada-California-Oregon Railway, a corporation. The respondent, a man about 58 years old and of foreign birth, had been in the employ of the defendant company for a period of about seven years, during which time he had been more or less constantly engaged as a millman, performing services in and about appellant's mill, and operating machinery and equipment therein, among which was a circular ripsaw fourteen inches in diameter. Respondent was earning approximately $3 a day.

On the 1st day of December, 1909, at about 10 o'clock in the morning, the respondent was injured by being struck with a piece of timber he had been cutting down to the proper dimensions, with a circular ripsaw, for a buffer block for one of appellant's cars, pursuant to instructions given him. By reason of the injuries thus sustained, respondent's left arm was so maimed as to become entirely useless, his ribs on the left side were

broken, and he was internally injured. As a result of his injuries he was confined to his bed for several months and forced to undergo an operation more or less serious in its nature. On the 2d day of January, 1911, the respondent brought suit against the defendant corporation and in due time the case was tried before a jury.

The defendant corporation joined issues with the plaintiff by an answer setting up specific denials of each and every allegation of the complaint, omitting any plea of affirmative defense. The result of the trial was a verdict for the sum of $15,000, by reason of which verdict judgment was rendered in favor of the respondent and against the appellant. Motion for a new trial having been made before the trial court, the same was denied, and from the judgment and order denying defendant's motion for a new trial appeal is taken to this court.

A motion to dismiss the appeal has been made in this case on behalf of the respondent, and two grounds are relied upon in support of that motion: First, that the copy of the notice of appeal was served prior to the filing of the same; and, second, that the surety on the undertaking on appeal failed to justify after exception was filed to the sufficiency thereof.

**1-3.** As to the first proposition, it appears that the notice of appeal was dated and filed December 28, 1911, and there is attached to the original notice the affidavit of James Glynn, attorney for appellant, set forth as follows: "That on the 28th day of December, 1911, and within the time allowed by law, at Reno, Nevada, he served a true copy of the within notice of appeal on Parker & Frame, attorneys for plaintiff, by delivering to J. S. Parker, of said firm, a true copy of said notice." Attached to the respondent's motion to dismiss is the affidavit of J. S. Parker, one of the attorneys for respondent, which is in part as follows: "* * * That at the time of service of the copy of the notice of appeal the original notice of appeal had not been filed in the office of the clerk of the Second judicial court, in and for Washoe County, Nevada; that the notice of appeal as filed with said clerk

was filed after the copy of the same was served upon the attorneys for the plaintiff and respondent; that the notice served upon the plaintiff and respondent was not and is not a copy of the notice of appeal now on file herein; that the notice of appeal served upon the attorneys for the plaintiff and respondent in this case on the 28th day of December, 1911, is attached hereto and made a part of this affidavit." The copy of the notice of appeal, attached to the affidavit of J. S. Parker, quoted above, and made a part thereof, is a correct carbon copy of the original notice of appeal, save and except that it does not contain a copy of the file marks of the clerk.

In the case of *Elder* v. *Frevert*, 18 Nev. 279, this court held that when a transcript on appeal fails to show that the notice of appeal was served as required by the statute, and a motion is made to dismiss the appeal on that ground, the court may grant leave to the appellant to supply this omission by filing an affidavit as to the proof of service upon the argument of the motion.

In the case under consideration, after the motion to dismiss the appeal was filed in this court, and on the 27th day of April, 1912, James Glynn, attorney for appellant, filed his affidavit, in which he makes oath that a copy of the notice of appeal was served after the filing of the original. In this respect the affiant, James Glynn, goes considerably into detail as to the manner of filing and service. It appears from the record that the notice of appeal was filed in the clerk's office on the same day on which it is admitted in the affidavit of respondent's counsel the copy, as attached to the affidavit, was served on him. This court has held that, where the proof shows that the service of copy was made on the same day as the filing of the original, and in the absence of proof to the contrary, there is a presumption that the filing and service proceeded in regular order; that is, that the notice was filed before the copy was served. (*State* v. *Alta S. M. Co.*, 24 Nev. 230.)

Counsel for respondent in its motion places great stress upon the fact the copy served does not show the indorsements upon the back thereof, nor copy of the file marks

of the clerk; but in this respect it is our judgment that the indorsements upon the back of the original notice are no part of the notice, and a failure to include all or any of them does not affect the copy served. It would seem that the affidavit of J. S. Parker, to the effect that the original notice was filed after the service of a copy, was based, to some extent at least, upon the assumption that the copy of the notice must also include a copy of all indorsements. Nowhere in his affidavit does counsel for respondent set forth extrinsic facts which would tend to show that he had any particular knowledge of the order of filing and service, other than that gained from the documents themselves.

Even aside from the affidavits in this case, the record shows that the copy was served on the same day on which it was filed. Therefore, in the absence of proof, the presumption is that they were filed in regular order; hence it is incumbent upon counsel for respondent to overcome this presumption. This, we think, in view of the counter affidavits in behalf of the appellant, has not been accomplished.

**4, 5.** As to the second proposition relied upon in furtherance of respondent's motion to dismiss, the record discloses that, on the day following the filing of the notice of appeal and the undertaking on appeal, respondent filed his exception to the sufficiency of the surety in the following form: "Comes now the plaintiff in the above-entitled action and excepts to the sufficiency of the securities on the undertaking filed herein on appeal and on stay of execution on the 28th day of December, 1911, and asks that the said surety or sureties on said undertaking appear before the judge of the Second judicial court in Washoe County, Nevada, and justify sureties as required by section 3443 of the Compiled Laws of Nevada."

The statute in force at the time at which this appeal was taken did not require the party excepting to the sufficiency of the surety to serve notice of his exception upon the adverse party, and it is admitted in this case that no notice of respondent's exception was served

upon the appellant. It is contended by counsel for the respondent that under the provisions of the statute they were not required to give or serve notice on appellant of a demand for justification of the surety, but that appellant was bound, at its own peril, to take notice of any such demand, and authorities are cited in support of that contention. To say the least, the recognition and enforcement of a rule of this kind would be exceedingly harsh, and in view of rule 10 of the district court, which we believe applicable to matters of this character, it is our judgment that the appellant is entitled to notice of exception to the sufficiency of the surety and demand for justification. Furthermore, this court held, in the case of *Pratt* v. *Rice,* 7 Nev. 123, that if on motion there is no good cause for haste or concealment, and if facts are to be found in the ascertainment of which the opposite party is deeply interested, such party has a right to notice and an opportunity to be heard.

In this case the appellant did not offer personal surety, but, on the other hand, the United States Fidelity and Guaranty Company executed appellant's bond on stay of execution pending the hearing and determination of the motion for a new trial, and the trial judge on the 16th day of November, 1911, approved the bond given on stay of execution. The rules of the district court require that bonds given to stay execution, pending the determination of motion for a new trial, must be approved by the court. The statute under which this appeal was taken did not require the approval of undertakings upon appeal, in the absence of a demand for justification of the surety.

The undertaking on appeal in this case was given pursuant to the provisions of the act of March 26, 1909, authorizing surety companies to become sole surety upon official or other bonds. The Revised Laws, secs. 695–701, supersede the prior act of 1887, as amended (Stats. 1903, p. 63). Applicable to this subject this court held, in the case of *Botsford* v. *Van Riper,* 32 Nev. 214, that the former act was a general law, which did not repeal the provisions of the practice act relative to undertakings,

but provided an additional method for furnishing such undertaking at the option of the appellant.

Section 5 of the act of 1909 (Rev. Laws, 698) provides how surety companies shall justify when required so to do. The section is as follows: "The certificate or any duplicate certificate issued by the secretary of state in accordance with the provisions of this act shall be *prima facie* evidence in all the courts of this state of all matters herein stated; *provided,* such certificate be not more than six months issued. Any printed copy of a circular issued by the treasury department of the United States known as Form No. 356, stating the amount of the capital and surplus of any such surety company, and not more than six months old, as appears from the date of issuance thereof, shall be *prima facie* evidence of the amount of such capital and surplus and of the amount to which such company is entitled to be received as sole surety on any bond in this state, and shall, if accompanied with the certificate of the secretary of state herein mentioned, be a complete justification for any amount not exceeding ten per centum of such capital and surplus, whenever any such company shall be required to justify on any bond or undertaking; *provided,* that the party requiring such justification may produce competent evidence to show that such surety company is not worth such sum over and above all its just debts and liabilities exclusive of property exempt from execution; *provided, further,* that bonds and undertakings on which such company may have become surety shall not be considered as debts or liabilities unless the obligation thereon shall have accrued and the obligee shall have demanded payment from such company."

Section 3443 of the statute under which this appeal was taken (Comp. Laws) relates to the justification of personal sureties, and in that respect the method of justification of personal sureties was provided for by section 3699 of that statute (Comp. Laws). That statute makes provision for the examination of the sureties upon oath touching their qualifications. An entirely different

method is provided by section 698, Revised Laws, *supra,* for the justification of the surety, when the same is a surety company.

The exception to the surety filed by respondent in this case might be sufficient and applicable where personal sureties were given on the bond, but it is our judgment that it was not applicable, nor sufficient, where the bond was executed by a surety company. Hence the motion to dismiss is without merit.

There is no question in this case more vital to be considered than that of the pleadings of plaintiff and defendant, in view of the assignments of error made by appellant. The complaint sets forth, in section 8, the following allegation: "Plaintiff further avers that, in and about the operation of the said saw at the time of the injury aforesaid, he was exercising ordinary care and diligence and was without fault or negligence on his part." In the answer the defendant, appellant herein, relied entirely upon specific denials of each and every allegation and averment of the complaint, without setting up affirmative matter or an affirmative defense of any kind; and, by reason of the attitude of the defendant in so relying upon denials for a defense, we are confronted with the question of whether or not contributory negligence or approximate cause or assumed risk are properly defenses in this case and, if so, to what extent.

The only attempt on the part of the defendant to raise the question of contributory negligence was a specific denial of the above-quoted allegation as follows: "Defendant denies that, in and about the operation of said saw at the time of the alleged injury, plaintiff was exercising ordinary care and diligence, or any care and diligence, and denies that plaintiff was without fault or negligence upon his part."

6. Appellant contends that by this denial, as set forth herein, the issue of contributory negligence became an element in the case sufficient to warrant the defendant in introducing evidence in support of that defense. We

find the authorities, especially in American jurisdictions, to be exceedingly concurrent in declaring that, in an action for negligence or personal injury, the plaintiff need not allege that the injury of which he complains was caused or occasioned without his fault. He need not aver that he was not guilty of contributory negligence (in other words, he need not negative his own negligence or fault), the general reason for this being that it is properly considered a matter of defense; and it is not necessary to allege matters which more properly would or should come from the other side. At common law there was no procedure or rule requiring the plaintiff in a case of negligence to assert that he was free from fault or negligence. No rule was laid down at common law which would require of the pleader any independent or explicit allegation that he was without fault. (*Lee* v. *Troy Citizens' Gaslight Co.*, 98 N. Y. 115.)

The Supreme Court of the United States, in the case of *Texas and Pacific Railroad Co.* v. *Volk*, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78, speaking through Mr. Justice Gray, laid down the rule as follows: "By the settled law of this court, not controverted at the bar, contributory negligence on the part of the plaintiff need not be negatived or disproved by him, but the burden of proving it is upon the defendant."

This same doctrine has been reasserted in other decisions of the supreme court, and this general rule is therefore well established in that court. (*Washington R. Co.* v. *Harmon's Admr.*, 147 U. S. 571, 13 Sup. Ct. 557, 37 L. Ed. 284; *Hough* v. *Railroad Co.*, 100 U. S. 213, 25 L. Ed. 612; *Indianapolis R. Co.* v. *Horst*, 93 U. S. 291, 23 L. Ed. 898.) The rule, in the state jurisdictions, applicable to this phase has been largely to the same effect, with some slight exceptions to that laid down both at common law and in the federal court. (*Crane* v. *Mo. Pac. R. Co.*, 87 Mo. 588; *Mary Lee Coal Co.* v. *Chambliss*, 97 Ala. 171, 11 South. 897; *House* v. *Meyer*, 100 Cal. 592, 35 Pac. 308; *Mayes* v. *Chicago R. Co.*, 63 Iowa, 562, 14 N. W.

340, 19 N.W. 680; *Thompson* v. *No. Mo. R. Co.*, 51 Mo. 190, 11 Am. Rep. 443; *Higley* v. *Gilmer*, 3 Mont. 90, 35 Am. Rep. 450; *Grant* v. *Baker*, 12 Or. 329, 7 Pac. 318.)

The allegation of the complaint quoted above, which tends to negative the negligence or fault of the plaintiff, was unnecessary. It could have been entirely eliminated in view of the other allegations of the complaint. It is true that should the plaintiff in stating his cause of action detail facts which disclose *prima facie* that he was guilty of contributory negligence, or that his acts were the proximate cause of the injury, it becomes incumbent upon him, for the purpose of overcoming such inferences, to allege that the injuries occurred without fault on his part; and, unless such disclosures show clearly that the plaintiff was in fault, such averment is unnecessary and superfluous.

In the case of *Grant* v. *Baker*, *supra*, the Supreme Court of Oregon, speaking through Mr. Justice Thayer, said: "The impression seems to have prevailed, to some extent at least, that this court there held (*Walsh* v. *O. R. & N. Co.*, 10 Or. 250) that a plaintiff would not be entitled to recover in an action for negligence without showing affirmatively that the injury was not the result of his own negligence; that he would have to first establish that there was no contributory negligence upon his part. I do not think that is the law, nor that the case of *Walsh* v. *Oregon Railway and Navigation Company* intended to hold any such doctrine." In this same case the court, in attempting to establish the rule, said: "I think it has always been understood by this court that contributory negligence is a defense, and must be averred as such * * * where the injury results from the direct act or omission of the defendant, which *prima facie* is negligence in itself, and the plaintiff received an injury in consequence thereof, while pursuing his ordinary course of affairs, he will not be compelled, in order to recover his damages, to prove that he was free from fault."

In the case of *Johnston* v. *O. S. L. R. Co.*, 23 Or. 100, 31 Pac. 285, referring to the Grant-Baker decision, *supra*, the

supreme court said: "We think the correct rule is laid down by Thayer, J., in *Grant* v. *Baker, supra,* and that in order to recover for personal injury it is not necessary to allege that the plaintiff has been free from negligence, or to deny that any act of his contributed to the injury sustained; that contributory negligence is a defense which must be pleaded; and that while the burden of proof is on the plaintiff to show that the appliance was defective, and that the master had knowledge or notice thereof, or ought to have had, the burden of proof is on the defendant to show that the servant did know the defect and that his negligence has contributed to the injury." To the same effect is the case of *Northern Pacific Ry. Co.* v. *Hess,* 2 Wash. 387, 26 Pac. 866.

7. In view of the position taken by appellant and in view of its offer of certain evidence, presumably for the purpose of establishing an affirmative defense of contributory negligence, the phase of the case applicable to the pleadings is especially interesting and vital. The appellant contends that the specific denial of the allegation of ordinary care and diligence was sufficient to raise the issue of contributory negligence and was sufficient to take the place of an affirmative plea of contributory negligence and was sufficient to warrant the court in admitting testimony which would tend to establish this special defense. We think that the answer fails to raise the issue of contributory negligence by its specific denial. If the defendant had evidence that would have established negligence on the part of the plaintiff contributing to the accident, it was the duty of the defendant, if it sought to avail itself of that evidence, to specially plead contributory negligence, and without such a special plea the affirmative defense of contributory negligence was not an element in the case, except as hereinafter discussed.

The authorities are not altogether uniform on this particular phase. The greater line of authorities, however, hold that contributory negligence must be especially pleaded. It is interesting to follow the rule from its

earlier adoption to the present time and especially to note the application of this rule in cases where common law strictly prevailed. Lord Chancellor Ellenborough, in the case of *Knapp* v. *Salisbury*, Campb. Reps. vol. 2, 500, laid down the rule applicable at that time. In that case the chancellor asserts that contributory negligence ought to be especially pleaded, and this decision of the chancellor is quoted approvingly in many of the later English cases. By far the greater number of the state jurisdictions have adopted a similar doctrine.

In the case of *Nelson* v. *City of Helena*, 16 Mont. 21, 39 Pac. 905, the court said: "It is the doctrine of this jurisdiction that contributory negligence is a matter of defense, and that plaintiff need not allege or prove its absence."

The above rule was again referred to and approved in the case of *Nelson* v. *Boston and Montana M. Co.*, 35 Mont. 229, 88 Pac. 785.

In the case of *Kennedy* v. *S. P. R. Co.*, 59 S. C. 535, 38 S. E. 169, the Supreme Court of South Carolina, in passing upon this subject, appropriately quotes its former decision upon a similar matter and says: "In actions for injuries to person or property alleged to have resulted from the defendant's negligence, he may prove, under a general denial, that the wrong was caused by the negligence of third persons, not agents of the defendant, and for whom he was not responsible. * * * Where a party desires to avail himself of the defense of contributory negligence, he must set up such defense in his answer in order to entitle him to offer evidence to sustain such defense. * * * The reason why testimony is admissible, under a general denial, to prove that the injury was caused by the negligence of a fellow servant is because its tendency is to show that there was no negligence whatever on the part of the defendant. On the other hand, the reason why it is necessary to set forth in the answer the defense of contributory negligence on the part of the plaintiff is because the testimony showing such contributory negligence does not disprove the allegation of the complaint that the injury was caused

by the negligence of the defendant. The defendant, by setting up in his answer the defense of contributory negligence on the part of the plaintiff, does not attempt to escape liability by showing a failure of negligence on his part but, because the plaintiff has done that which prevents a recovery against him, although he (the defendant) may have been guilty of negligence. Such facts would constitute an affirmative defense, of which the defendant could not get the benefit unless it was set up in the answer."

Mr. Pomeroy, in his work on Remedies and Remedial Rights, is emphatic in his declarations, and the learned author's assertion in this respect is borne out by well-considered opinions. (Pomeroy's Remedies and Remedial Rights, 671–675; *Wilson* v. *Charleston and So. Ry. Co.*, 51 S. C. 79, 28 S. E. 91.)

As we have already said, the courts are by no means uniform in their holding on this phase of pleading. Some jurisdictions have held that contributory negligence need not be pleaded. (*St. Anthony Falls River Co.* v. *Eastman*, 20 Minn. 277; *Levy* v. *Metropolitan Street Ry. Co.*, 34 Misc. Rep. 220, 68 N. Y. Supp. 944; *McQuade* v. *Chicago Ry. Co.*, 68 Wis. 616, 32 N. W. 633; *N. Y. R. R. Co.* v. *Robbins*, 38 Ind. App. 172, 76 N. E. 804.)

It must be observed, however, from a very careful consideration of the decisions of the various courts, that by far the greater number of jurisdictions and the stronger reasoning favor the doctrine that the defense of contributory negligence cannot be raised under a general denial, and that there must be a special plea of contributory negligence in order to render evidence of it admissible. (*Kansas City R. Co.* v. *Crocker*, 95 Ala. 412, 11 South. 262; *De Amado* v. *Friedman*, 11 Ariz. 56, 89 Pac. 588; *D. & R. G. Ry. Co.* v. *Smock*, 23 Colo. 456, 48 Pac. 681; *Jacksonville Elec. Co.* v. *Sloan*, 52 Fla. 257, 42 South. 516; *Willis* v. *City of Perry*, 92 Iowa, 297, 60 N. W. 727, 26 L. R. A. 124; *Western Union Tel. Co.* v. *Morris*, 10 Kan. App. 61, 61 Pac. 972; *Hudson* v. *Wabash Western R. Co.*, 101 Mo. 13, 14 S. W. 15; *Collins* v. *Fillingham*, 129

Mo. App. 340, 108 S. W. 616; *Birsch* v. *Citizens' Elec. Co.*, 36 Mont. 574, 93 Pac. 940; *Brown* v. *Sullivan*, 71 Tex. 470, 10 S. W. 288; *Smith* v. *Ogden R. Co.*, 33 Utah, 129, 93 Pac. 185; Thompson's Commentaries on Law of Negligence, sec. 365.)

In the many cases of damages growing out of personal injuries decided by this court, this particular question of pleading has never been raised, or at least has never been directly passed upon in so far as we are able to discover, and hence we believe that we are establishing the rule for the first time in this jurisdiction as to the necessity of an affirmative plea where the defendant proposes to rely upon contributory negligence as a defense.

The plea of contributory negligence is generally conceded and regarded as one in the nature of confession and avoidance. It is a plea which tends to admit the negligence of the defendant, but to avoid the consequences to the defendant by asserting that through the negligent acts of the plaintiff in contributing to the accident the injuries resulted. In the case of *Horton* v. *Ruhling & Co.*, 3 Nev. 498, this court said: "New matter which is simply an avoidance of the cause of action made out by the plaintiff should always be specially pleaded. Such is the rule declared by Chitty, and it is unchanged under the modern practice. * * * No proof of new matter in avoidance can therefore be admitted unless it is so pleaded as to apprise the opposing party of the nature of the defense."

A special plea, setting up an affirmative defense is in our judgment the only proper pleading in a case of this character under which or by reason of which evidence can be introduced at the trial to sustain the issue of contributory negligence. It will not suffice if the defendant in an action of this character merely denies the allegation of plaintiff, wherein the latter avers the negligence of the defendant, even though he negative negligence or fault on his part.

In the case of *Hudson* v. *Wabash Western R. Co.*, 101 Mo. 13, 14 S. W. 15, this question was passed upon by the Supreme Court of Missouri under conditions very similar

to those presented in the case under consideration in that the pleadings in that case were almost identical to those of this case. In that case the complaint set forth: "That by said negligent acts and without any fault on his part he was then and there caught between the two of said cars." To this allegation the defendant answered by denying this averment, and by their specific denial they contended that the defense of contributory negligence was raised without a special plea or defense asserting negligence on the part of the plaintiff. The Supreme Court of Missouri, speaking through Sherwood, J., in passing upon the case, said: "It is the unquestioned law of this state that contributory negligence is strictly an affirmative defense, and, in order to avail a defendant as a matter of pleading, it must be affirmatively pleaded." (*O'Connor* v. *Railroad Co.*, 94 Mo. 155, 7 S.W. 106, 4 Am. St. Rep. 364; *Donovan* v. *Railway Co.*, 89 Mo. 147, 1 S.W. 232; *Schlereth* v. *Railroad*, 96 Mo. 509, 10 S.W. 66.)

The doctrine laid down in the Hudson case, *supra*, is affirmed in a very recent case (*Goodloe* v. *Metropolitan Street Ry. Co.*, 120 Mo. App. 194, 96 S. W. 482) to the effect that contributory negligence is an affirmative defense which must be pleaded.

Again, in the case of *Collins* v. *Fillingham*, 129 Mo. App. 340, 108 S. W. 616, the court said: "Contributory negligence, when not pleaded, is not available as a defense, unless plaintiff's evidence affirmatively shows contributory negligence."

In the case of *Fechley* v. *Springfield Traction Co.*, 119 Mo. App. 358, 96 S.W. 421, the court held that where, in an action for negligence, the only answer remaining in the record, after the issues were made up, consisted in a general denial, plaintiff's contributory negligence was no defense, unless the testimony he introduced so clearly showed that he was negligent in a manner contributing to the accident that the court would have been warranted in denying him relief.

8, 9. In the case under consideration the defendant, having failed to especially plead contributory negligence, seeks to avoid this by invoking the doctrine that,

when the plaintiff's own evidence makes out a case of contributory negligence, there can be no recovery. Under the authorities establishing the rule, this contention may be maintained, but the plaintiff's case must be of such a character as to warrant the trial court in saying, as a matter of law, that the plaintiff has been so flagrantly guilty of contributory negligence as to defeat his action. Where the question of contributory negligence is a debatable one, or one upon which reasonable minds might differ, the question should be submitted to the jury.

There is an exception to the rule requiring contributory negligence to be especially pleaded. This exception is generally stated thus: When the fact of contributory negligence is disclosed by the evidence offered in behalf of the plaintiff, in such a case a defendant is entitled to take advantage of such disclosure, notwithstanding the fact that he has made no plea of contributory negligence. A very appropriate application of this rule is stated in the case of *McMurtry* v. *L. N. O. & T. Ry. Co.*, 67 Miss. 607, 7 South. 403, wherein the court said: "If plaintiff's pleadings and proof had left the case blank as to his contributory negligence, and it had become necessary for the defendant to take the affirmative and to show as a defense plaintiff's contributory negligence, there, we suppose, it would be the practice to require such defense to be set up under an especial plea. But when, as in this case, contributory negligence is palpably made to appear by the plaintiff's evidence, we are aware of no rule, nor can we see the reason for any rule, requiring the defendant to either plead or prove such contributory negligence."

As was asserted by the Supreme Court of Utah, in the case of *Bunnell* v. *Railroad Co.*, 13 Utah, 314, 44 Pac. 927, contributory negligence is a matter of defense and must be alleged and proven by the defendant; but where the testimony on the part of the plaintiff, who seeks to recover damages for injuries resulting from negligence, shows conclusively that his own negligence or want of ordinary care was the proximate cause of the injury, he

will not be permitted to recover, even though the answer contains no averment of contributory negligence. As a matter of fact, even though there be no defense of contributory negligence in the trial of the case, if the evidence is undisputed or is of such a conclusive character that the court in the exercise of sound judicial discretion would be compelled to set aside the verdict by reason of the evidence of the plaintiff disclosing flagrant contributory negligence, it is well established that the court may withdraw the case from the jury altogether and direct a verdict for the defendant. In a case of that kind it would be unnecessary for the defendant to either plead or prove a special defense of contributory negligence.

The authorities generally hold under this exception to the rule that, where the testimony of the plaintiff shows circumstances of contributory negligence which absolutely defeat his right of action and disprove his own case, the defendant is at liberty to take advantage of such testimony, though produced by the adversary. This principle, however, does not apply to the pleadings, and applies only to instances where the testimony produced on the part of the plaintiff is such as to absolutely defeat his right of action by showing conclusively either that the accident occurred through wilful neglect or that he was so flagrantly guilty of negligence as to preclude the possibility of the defendant being liable. Where testimony of such a nature is produced by the plaintiff's case, the defendant may take advantage of it either for the purpose of moving a nonsuit or in any way that he may see fit. This, however, would not permit the defendant to introduce evidence tending to prove contributory negligence on the part of the plaintiff, unless by an especially pleaded allegation in the answer the question was raised. From this, then, it will be observed that the contributory negligence of the plaintiff must either appear unequivocally by the allegations of the complaint or must be raised and produced by conclusive evidence given in behalf of the plaintiff in order to warrant the defendant in taking advantage of such disclosures.

Here it may be questioned: How far may the defendant go in taking advantage of the disclosure of contributory negligence coming from the plaintiff's own case? It is our judgment that the defendant may take advantage of such disclosures only to the extent of using the evidence produced or the averments of the complaint as matters tending to defeat the plaintiff, and may rely upon such disclosures either for the purpose of nonsuit, where, at the conclusion of the plaintiff's case, it is manifest that the case should not go to the jury, or for the purpose of argument in favor of a verdict finding against the plaintiff; but, under no line of reasoning can we conceive, in view of the rule generally established, that such disclosures on the part of the plaintiff would take the place of an affirmative plea or defense of contributory negligence. Moreover, such evidence, if produced during the presentation of plaintiff's case in chief, will not open the door for defendant to introduce new evidence independent of the plaintiff's testimony in support of contributory negligence, unless he is prepared for the introduction of such testimony by pleading a special defense of contributory negligence.

Mr. Thompson, in his Commentaries on the Law of Negligence, sec. 369, clearly and concisely states the rule which, in our opinion, is the better one to be applied by courts in the trial of cases of this character and under conditions such as present themselves in this case. He says: "The doctrine intended to be stated by such courts, and clearly stated by others, is that, where the plaintiff's own evidence, whether delivered by his own mouth or the mouth of his witnesses, shows that he, or the person killed or injured, was guilty of negligence contributing to the death or injury, there can be no recovery, whether the defense of contributory negligence has been pleaded or not. If, on the other hand, the conduct of the plaintiff is compatible with the conclusion that he exercised reasonable care, he cannot be nonsuited, but the case must go to the jury." The learned author quotes approvingly from a recent decision of the Supreme Court of Pennsylvania as follows: "Contributory negligence is a matter

of defense, and the *onus probandi* is on the defendant, unless the plaintiff's own evidence sufficiently discloses the fact of contributory negligence. In that event plaintiff cannot recover, and of course the defendant is relieved from the necessity of proving what has already been established by the plaintiff's evidence. If, however, the plaintiff makes out a *prima facie* case without disclosing contributory negligence, the defendant must assume the burden of making out his defense." (Thompson's Commentaries on Law of Neg. sec. 369, *et seq.*)

It may be questioned in the light of these authorities: How may this rule, if applied, affect a defendant in a case of this character, who has failed or refused to especially plead the defense of contributory negligence, and a *prima facie* case is made out by the plaintiff, such as to warrant the court, at the conclusion of his case, to submit the case to the jury? The answer is obvious that the affirmative plea of contributory negligence not having been raised by the defendant in his pleadings, and the evidence produced establishes a *prima facie* case, in the light of all the authorities it must follow that under such a state of affairs the defendant has by his act precluded himself from offering evidence tending to establish contributory negligence as against the plaintiff; and, where the court under such conditions holds evidence of this character inadmissible, it is not error. It is only where the plaintiff's case conclusively discloses negligence on his part that such disclosure may be taken advantage of by defendant in authorizing the court to advise a verdict for him. If, however, the evidence only tends to show, or only raises an inference of, contributory negligence, the question should properly go to the jury to be determined like any other question of fact. The mere suspicion of negligence arising from the plaintiff's case will not warrant the court in taking such action. On the contrary, the inference of negligence on the part of the plaintiff must be so strong as to be unavoidable and conclusive. Where some evidence disclosed during the plaintiff's case merely tends toward the conclusion of contributory negligence, but lacks that cogency to make

it conclusive, then it merely raises a question for the jury and should be submitted to the jury. (Thompson's Commentaries on Law of Neg. vol. 1, sec. 471.)

The testimony of Konig, the respondent, as to his acts leading up to the accident must be reviewed in the light of these observations as to the law, and in that connection, and bearing directly upon the condition of the implement and the circumstances before, at the time of, and after the accident, the testimony of Webber and Pearl is to be considered.

**10.** The manner in which this accident occurred is described by the plaintiff in his testimony, and his acts detailed on direct and cross-examination are to be scrutinized in determining what part his acts may have played in bringing about the catastrophe. His immediate acts attending the accident are best related in his own language: "So I start in to run that piece through. The saw ran all right so far when I got about the end of that piece of timber where on the end wider than it was in front by the start. So that got tight between the gage and the saw. * * * That made the saw hot on the point. It has get hot start in buckling so I have to push that block through, and it got pretty near the end and tried to throw that block off so the saw took the block out of my hand, caught that block on the edge, and run that block here on the arm, right in the left side; that threw me back about sixteen feet, knocked me out of the wind."

On cross-examination the plaintiff testified as follows:

Q. Why did you not go and turn off the power? A. I had no time.

Q. There was nothing for you to do except push it clear through? A. Yes, sir.

Q. Now, as a millman, could you not walk away or have gone over here and shut off the power? A. No, can no do it.

Q. Do you know you could leave the block right there and let the saw turn over and over? A. It is dangerous; there is danger.

Q. There is danger?  A. Yes, I had to hold it right down unless the saw catch it and turn it over.

Q. You cannot draw it back?  A. No, I don't want to do that.

Q. And cannot go and turn off the power?  A. No.

Q. And the only thing you could do was to keep pushing it right through?  A. Yes, sir.

The witness Webber testified in his deposition relative to the condition of the saw as follows: "The ripsaw on which Mr. Konig was working was dished; the saw would not run straight; and the material had a tendency to jump up and apparently to try and get away from the saw.  If I fed a little too fast, the saw became hot and would scorch the edge of the lumber.  *  *  *  The other men began wanting material for car repairs, which Mr. Konig had been getting out for the shop, and it had become necessary for some one to run the machine, so I assumed the responsibility of getting it out for them, until other arrangements were made.  When Mr. Meyers came in I told him I had been running the machine and had gotten out stuff for the boys.  He said, 'That is all right, but you must be careful.'"

The testimony of W. E. Pearl, as to things that came within his observation at the instant of the accident, was in substance to the effect that the block, after it struck the plaintiff, struck the wall on the opposite side, about eighteen feet from the saw.  Afterwards he examined the block, picked it up and looked at it, and saw the mark where the saw cut the end of the stick.  He further stated that on the day before the accident he examined the saw and found some burned spots on it that millmen call "thickened."

In determining whether, by reason of the facts disclosed during the plaintiff's case, this case comes within the exception, or in determining whether contributory negligence was disclosed by the plaintiff's case to such an extent as to warrant the defendant in taking advantage of it, or to warrant the court in withdrawing the case from the jury, we must first dwell upon the phase of

proximate cause and determine whether or not the evidence indicates that plaintiff was the proximate cause of his own injury.

In the case of *Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 271, this court, without going very far into the subject, said: "Proximate cause   *   *   *   means that which immediately precedes and produces the effect as distinguished from remote. In examining the authorities it will be found that 'immediate' and 'proximate' are indiscriminately used to express the same meaning."

In the case of *Milwaukee and St. Paul Ry. Co.* v. *Kellogg*, 94 U. S. 469, 24 L. Ed. 256, Mr. Justice Strong, speaking for the Supreme Court of the United States, said: "In the nature of things, there is in every transaction a succession of events more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts and ascertain whether they are naturally and probably connected with each other by a continuous sequence or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

The various authorities and text-writers in attempting to formulate a definition for "proximate cause" or "immediate cause" have found themselves confronted with great difficulty, and nearly every court that has had occasion to pass upon the question of proximate cause has formulated a definition of its own more or less applicable to their ideas of what constitutes proximate cause.

It has been said that intervening agencies sometimes interrupt the current of responsible connection between negligent acts and injuries, but as a rule these agencies, in order to accomplish such result, must entirely supersede the original culpable act and be in themselves responsible for the injury and must be of such a character that they could not have been foreseen or anticipated by the original wrongdoer. If it require both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence and assistance of one

will not exculpate the other, because it would still be an efficient cause of the injury. Proximate cause is not necessarily the one nearest to the event, but the primary cause may be the one proximately responsible for the result, although it may operate through one or more successive instruments. If the primary cause was so linked and bound to the events succeeding it that altogether they create and become one continuous whole, the one event so operating upon the other as to tie the result to the primary cause, the latter (*i. e.*, the primary cause) will be the proximate cause of the injury. (*White Sewing Machine Co.* v. *Richter*, 2 Ind. App. 334, 28 N. E. 446; *Shippers Company* v. *Davidson*, 35 Tex. Civ. App. 558, 80 S. W. 1032.)

In the case of *Milwaukee and St. Paul Ry. Co.* v. *Kellogg*, *supra*, the court said: "The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. (2 Bl. Rep. 892.) The question always is: Was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was some new and independent cause intervening between the wrong and the injury?"

In the very recent case of *St. Louis and San Francisco R. Co.* v. *Davis*, 132 Pac. 337, decided by the Supreme Court of Oklahoma, in which the question of proximate cause was under consideration, that court quoted approvingly the case of *Kellogg* v. *Railroad Co.*, 26 Wis. 223, 7 Am. Rep. 69, and also the case of *Milwaukee and St. Paul Ry. Co.*, *supra*, in saying: "'An efficient, adequate cause, being found, must be considered the true cause, unless some other cause not incidental to it, but independent of it, is shown to have intervened between it and the result.'

Where there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect and proximate to it."

It is argued in this case that, if the respondent had failed or refused to force the block against the saw, no accident would have occurred, but with the same degree of logic it might be argued that had he not been required to size down the buffer block, or in any wise use the saw, the accident would not have occurred. The primary cause in this instance was the defect in the saw. There was an intervening cause, namely, the forcing of the block through the saw; but when we apply the rule laid down in the several cases cited, and particularly in the case of *Shippers' Compress and Warehouse Co.* v. *Davidson, supra,* which we think correctly states the rule, the primary cause, namely, the defect in the saw, was so linked and bound to the acts of the respondent succeeding that, taking them all together, they create and become one continuous whole. The act of the respondent in forcing the block through the saw being an intervening cause of the accident that resulted, and the defect in the saw being the primary cause, the latter should properly be considered the proximate cause of the injury.

**11, 12.** It will be seen from the various expressions made by the authorities upon this vexing subject that the test is to be found in the probable injurious consequences which were to be anticipated, and not in the number of subsequent events or agencies which might arise. In other words, if the probable cause of an injury or accident is the first wrong done, then that becomes the proximate cause, regardless of how many acts may have been performed or how many agencies may have intervened between the first act or wrong and the catastrophe. Any number of causes may intervene between the first wrongful act and the final injurious consequences, and, if with reasonable diligence they are such as might have been foreseen, the consequences as well as every intermediate result are to be considered in law as the proximate result of the first wrongful cause. Whenever a new

cause intervenes which is not the consequence of the first wrongful cause, and which is not under the control of the first wrongdoer, and which he could not with reasonable diligence have foreseen, and except for which the final catastrophe could not have happened, then such a result must be held too remote to furnish the basis of an action. In all cases where no other cause intervenes between the original act or omission contributing or producing the resultant catastrophe, negligence of the first wrongdoer is to be regarded as the proximate cause of an injury. (Thompson's Commentaries on Law of Neg. vol. 1, sec. 49.)

The difficulty encountered by the courts, commentators and text-writers in formulating a definition comprehensible to proximate cause has been no less great than that encountered in attempting to apply their definitions to the circumstances of particular cases.    Each case presents its own particular set of circumstances, and a definition of proximate cause which might apply to one might be entirely inapplicable to another.

**13.** In the case under consideration it is seriously contended by appellant that the respondent, Konig, was the proximate cause of his own injury, by reason of his act in forcing the block against the saw when he found that the implement was binding and heating.    In this respect the respondent testified on cross-examination:

Q. Now, Mr. Konig, will you testify as an expert millman that you could not take a block that was twenty-six inches long back when you saw it was binding and pinching?   A. No.    I would not want to do it.

Q. And you never did do that?   A. No.

Q. You have sawed a great many of these bumper blocks?   A. Yes, sir.

Q. And you never took it back when you saw it was pinching or binding?   A. Not short blocks.

Q. If the saw gets hot, what do you do?   A. Well, if it is a short piece you push it through.   No can take it back.

Q. If the saw binds there is but one thing to do; that is, force it right on through?   A. A short piece I have to push it through.

The witness Pearl, on cross-examination, touching upon this subject testified:

Q. Now, Mr. Pearl, you have stated that you have run a saw that was thickened or cupped and it ran untrue. I will ask you whether or not, from your experience in using a saw in that condition, whether in the cutting of a small, short block, say about twenty-six inches long, where a saw running untrue and becoming bound near the end, or where the saw would leave the piece that was being cut, and where the—— and in case, where on that account there was a tendency of the piece being caught to climb up over the saw, to be thrown up over the saw, whether from your judgment and from your experience the operator of the saw could safely hold back the piece being cut and take it out of the saw, or whether it would be necessary to run the piece on through? A. I would consider it no more dangerous to push it on through.

Q. I will ask you to state whether there would be danger in attempting to remove that piece, of it being thrown by the saw, in taking the piece back. I will ask you to state whether there would be danger of the piece being thrown over the saw? A. There would.

In response to interrogatories by counsel for defendant, touching upon the same subject, the witness testified:

Q. Will you say if you started to saw there with the defective saw, a saw that you knew to be spotted and cupped, and you started a block and it commenced to bind by reason of the saw running off and making it bind at one end, that there is only one safe thing to do, and that is running the block on through? A. That is the question in my mind—to shove that block right on through, I think I would take just as many chances as to pull it back.

Q. Why? A. Because the saw would spring back and catch the block in the same way.

Q. Then there is only one thing when the saw binds, and that is to shove the block right on through? A. I wouldn't say that.

Q. Is that as safe a thing to do as anything else?  A. To the best of my knowledge it is.

Q. That is safer than going and trying to turn off the power?  A. If at the very moment you could turn off the power or stop it that quick, perhaps it would not be.

Q. I want an answer to that question, "Yes," or "No." Shoving the block is safer than turning off the power? * * * A. Well, there is a doubt in my mind. * * * I could not say without knowing all the circumstances; no, sir.

Q. Would there be any way to dodge to one side when you saw the saw was beginning to bind just a little?  A. I think not, if it was tight enough to throw the block.

Q. Before you could get out of the way?  A. Yes, sir.

Q. Did you say—do you think a careful millman would start sawing with a cupped or spotted saw?  A. Yes, sir.

As appears from the record, the button by which the power was turned off and on was located approximately thirty feet from the saw.

There is a decided conflict in the testimony on the subject of the safest course to pursue under the conditions; the testimony of Pierson and Myers being to the effect that in their judgment the safest thing to do under the conditions was to draw the block back from the saw. As to whether or not the respondent pursued the safer method after he found the conditions present was a question to be determined by the jury.

It is difficult for us to perceive how a servant operating with a defective implement, the defect of which had been brought to the attention of the master, could be held to be the proximate cause of his own injury, when he was performing the work required of him, at the place required, with the implement furnished, and doing his work in the manner in which such service was ordinarily performed by him. If the defect was brought to the attention of the master, and it is manifest that the jury believed the testimony of the plaintiff in that respect, then the final injurious consequences were such as with reasonable diligence might have been foreseen by the

master, and was the proximate result of the master's first wrongful act, in failing to repair the defective implement.

The case of *Gonzales* v. *City of Galveston*, 84 Tex. 3, 19 S.W. 284, 31 Am. St. Rep. 17, presents a state of facts which to our mind typifies the definition of proximate cause, as being not necessarily the last act of cause, or the act nearest to the injury. The action grew out of an injury occurring to Pauline Gonzales, a minor. It seems that lumber had been piled in the street in the city of Galveston by lumber dealers and had remained there for some years. A drayman hauling lumber had occasion to turn into the street from an alley and to pass by the pile of lumber at the time at which Pauline Gonzales and another child were close to the pile of lumber and on the opposite side, out of sight of the drayman. His load came in contact with the pile of lumber and knocked off some heavy pieces, killing one of the children and injuring Pauline Gonzales. The defendant city interposed as a defense the careless driving on the part of the drayman causing the injury without any fault on the part of the defendant, also that the injury was not caused by any careless piling of the lumber. The trial court instructed the jury as follows: "The proximate cause of plaintiff's injury was not the pile of lumber, but was the act of the drayload of lumber being driven against the pile of lumber, which, although on the street, was properly piled, and therefore the law will not in such case cause any liability on the part of the city, and you should find a verdict for the defendant."

The Supreme Court of Texas, in passing upon the case, said: "The most important question was: Was it negligence for the city to suffer the lumber to remain in the street at all? Was the lumber pile an obstruction in the street, and was the city negligent in not removing it or causing it to be done? If there was no negligence in this, or the city could lawfully allow the obstruction in the street (but we do not say that it would be lawful for the purpose shown), then the manner of piling the lumber might become important to show negligence, or

if negligence is shown in allowing it to be there, the manner of piling might be an additional proof of negligence; but it does not occur to us that the petition raises this question. If it were unlawful and negligent to fail to remove it from the street, the fact that it was carefully and safely piled would be immaterial; provided its being there was a concurring proximate cause of the injury. By proximate cause we do not mean the last act of cause, or nearest act to the injury, but such act, wanting in ordinary care, as actively aided in producing the injury as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause, such as might reasonably have been contemplated as involving the result under the attending circumstances."

In the case of *Christensen* v. *Floriston Pulp and Paper Co.*, 29 Nev. 552, this court held in substance that in an action for death the question whether the decedent was guilty of negligence proximately causing the accident was for the jury. In that case, however, the issues to be decided both by the trial court and by the reviewing court were entirely different from the one under consideration. In the Christensen case, *supra*, contributory negligence was made an affirmative defense and. was specially pleaded, and the question of proximate cause was one that could be supported by proof offered in behalf of the defendant, in support of its defense of contributory negligence. In this case the one question is: Did the evidence offered by the plaintiff present a state of facts substantially showing that plaintiff himself was the proximate cause of his own injury? It must be observed in this case that the defendant, by its own act in voluntarily omitting the defense of contributory negligence, precluded itself from offering evidence in support of that defense, and the only matter for this court to determine in that particular is whether or not the plaintiff's case warrants the conclusion that he was the proximate cause of his own injury.

In the case of *Gould* v. *Schermer*, 101 Iowa, 583, 70 N. W. 699, the Supreme Court of Iowa, passing upon an instruction given to the jury by the trial court said: "The

rule of law is well settled that the mere fact that some other cause operates with the negligence of the defendant to produce the injury does not absolve defendant from liability. His original wrong, concurring with some other cause, and both operating proximately at the same time in producing·the injury, makes him liable whether the other cause was one for which the defendant was responsible or not." This rule laid down in the Gould case was passed upon again by the Supreme Court of Iowa in the case of *Pratt* v. *Chicago, R. I. & P. Ry. Co.*, 107 Iowa, 292, 77 N. W. 1064.

14. However difficult it may be, in the first instance, to formulate a proper definition of proximate cause and, in the second instance, to apply such definition to a set of facts, one general rule is applicable to all cases, regardless of the facts that may be presented in any particular case, and that is, where the evidence discloses a succession of events so linked together as to make a natural whole and all so connected with the first event as to be in legal contemplation the natural result thereof, the latter will be deemed the primary cause, or "proximate cause," as it is more often termed. There·may be concurrent circumstances, and there may be intervening agencies, and one of the intervening agencies may be the acts of the party injured; but if the culminating fact, or the resultant catastrophe, came about by reason of all these agencies working together concurrently, then the first negligent act is and should properly be deemed the proximate cause. (*Detzur* v. *Stroh Brewing Co.*, 119 Mich. 282, 77 N. W. 948, 44 L. R. A. 500; *Cornelius* v. *Hultman*, 44 Neb. 441, 62 N. W. 891; *Milwaukee and St. Paul Railway Co.* v. *Kellogg*, 94 U. S. 469, 24 L. Ed. 256.)

In the case under consideration the defective implement was the primary cause. There were intervening concurrent agencies, namely, the acts of the plaintiff performing his work in cutting down the buffer block, and his act in forcing it through the saw. The culminating catastrophe would not have happened in the absence

of either the primary defect or the intervening agencies; hence they operated concurrently, and the primary negligence, namely, the defective implement, must in the light of all the rules laid down by the authorities be deemed to have been the proximate cause and not the act of the plaintiff in performing his services. (*Rice* v. *Reese*, Tex. Civ. App. 110 S. W. 502.)

**15, 16.** Another question which naturally arises in determining proximate cause is that of the plaintiff's act in exercising the proper care for his own personal safety, in view of the fact that he admitted knowledge of the defect of the implement that he was using. It is contended by the appellant that plaintiff was the efficient proximate cause of his own injury in using the implement, knowing the same to be defective, and in forcing the block against or through the saw, after he found the same to be binding and heating. The law is well settled that a plaintiff cannot prevail in an action for damages where his injuries, sustained in the course of his employment, were brought about by his own negligence in performing an act, the danger of which was so obvious and threatening that a reasonably prudent man, under similar circumstances, would have avoided them, if in his power to do so. In such a case the plaintiff will be deemed to have assumed the risks involved in such a reckless exposure of himself to danger, but in determining as to whether or not one was reckless or did recklessly expose himself to danger, or as to whether or not he exercised the care that a prudent person would exercise for his own personal safety, the law is humane and takes into consideration as much as possible the imperfections of human reasoning and the peculiar conditions surrounding each particular case and each particular individual.

In the case of *Kane* v. *Northern Central Ry. Co.*, 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339, the Supreme Court of the United States, speaking through Mr. Justice Harlan, said: "In determining whether an employee has recklessly exposed himself to peril, or failed to exercise

the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position; indeed, to all the circumstances of the particular occasion."

The same doctrine was again enunciated in the case of *Union Pacific Ry. Co.* v. *McDonald,* 152 U. S. 281, 14 Sup. Ct. 627, 38 L. Ed. 434, and the court in the latter case said: "Where human life or personal safety is involved, and the issue is one of negligence, the law will not lightly impute negligence to an effort, made in good faith, to preserve the one or to secure the other, unless the circumstances under which that effort was made show recklessness or rashness."

This same principle, applicable to exercise of proper care, was again enunciated by the Supreme Court of the United States in the case of *Choctaw Ry. Co.* v. *Holloway,* 191 U. S. 334, 24 Sup. Ct. 102, 48 L. Ed. 207.

The principles set forth in the several cases last cited are not in conflict with the declaration of this court in the case of *Solen* v. *V. & T. R. R. Co.,* 13 Nev. 106, declaring that plaintiff's prudence is to be measured in proportion to the danger; the greater the risk, the greater the degree of care required.

17. The accident that occurred, out of which the respondent received his injury, was one that could not reasonably have been anticipated. It was one that occurred in an instant, without any considerable degree of warning. It is contended by appellant that when the plaintiff found the saw binding he should have shut off the power, or withdrawn the block from the saw or dodged under the table. There appears to be a decided conflict in the testimony as to which of the three things he should have done to afford the greatest degree of safety, and it is a question as to whether either could have been done in view of the suddenness of the accident, and from the testimony the jury could reasonably infer that, by reason of the peculiarity of the accident and the sudden manner in which it occurred, the respondent could not have averted the accident. This is especially

true in view of the conflicting testimony on the subject as to the safest method to have pursued. In this respect it must be said that there is 'a wide difference between ordinary diligence and extraordinary diligence. The former is incumbent upon the plaintiff, but the latter is not. (*Bunting* v. *C. P. R. R.*, 14 Nev. 360.)

**18.** Appellant contends that as the defect was known to the respondent, and in view of his knowledge and experience, he assumed the risk by forcing the block through the saw. Knowledge of the defective condition of the implement is admitted by the respondent in his testimony, wherein he states that he brought the defect to the attention of the master mechanic. As to whether or not the defect in the saw was drawn to the attention of the master by the servant in this case, in view of the conflicting testimony, was a matter to be determined and was determined by the jury, and it is manifest that the jury concluded that the defect had been drawn to the attention of the master.

The respondent at the trial testified as follows: "* * * I told Mr. Meyers that saw was out of repair. I was afraid I get hurt on that some time. Mr. Meyers got a rule, put that rule and leave it on, and said: 'All right, you go right on. I take that saw over to the Nevada Planing Mill and get it fixed for you.'" At another place in his testimony he repeated this incident and said: "I saw the saw got some spots on the side; there was a burn. Then the saw made gotten dished, as they call it. So I told Mr. Meyers that saw were out of order, so I were afraid I get hurt on that saw. Mr. Meyers take that rule, and said: 'All right, you go right on. I take that saw over to the Nevada Planing Mill and get it fixed for you.'"

These declarations of complaint on the part of the servant and promise on the part of the master in this case are to our mind borne out to some degree at least by the testimony of witness Webber, dwelling on events and statements a day or two subsequent to the accident. His testimony in that respect is as follows:

Q. State fully what Mr. Meyers said at this time about this saw and its condition.  A. Mr. Meyers said, "No one could run a saw like that."  *  *  *  Mr. Meyers came through and seeing the two men at work, asked what was the matter.  When told, he turned to me and said, "Webber, you don't want to be wasting too much time fixing up this damned old machinery."  *  *  *  He then said, "Let it wear out, then we will get a new one."  He called them "rattle traps."

While this particular piece of testimony does not establish the condition of the saw prior to the accident, nevertheless it goes a long way toward indicating a rather remarkable attitude on the part of the master mechanic.  If it had any weight with the jury, it must have indicated a decided carelessness on the part of the master in this instance as to the condition of the implement or implements being used by its servants.

**19, 20.**  It is a matter of law that continuance in service by the servant for a period of time beyond which it would be reasonable to expect that the promise of the master to repair would be kept would tend to defeat the servant's claim for damages for injuries resulting from the defect.  The general rule is that if the servant, noting the defect in the machinery, complains to the master of such defect, and the latter promises to remedy the same, the servant may, in reliance upon the promise, continue in the service for a reasonable time thereafter without thereby assuming the risk; provided the danger is not so imminent and immediate in character that a person of ordinary prudence would refuse to continue in the service.  It is established by the testimony of some of the witnesses in this case that, where spots occur in a circular saw, it indicates that the temper has gone out of the metal in those places, but such defects do not necessarily immediately impair the usefulness of the implement and may be repaired by a process of hammering.  It does not appear that any attempt was made by the appellant to resort to this process, for the purpose of repairing the defects which were manifestly there.

The testimony of Webber discloses that the "saw was wabbly," and that by reason of such defect it would not saw true. This important fact is also borne out by the testimony of Meyers, the master mechanic, when he said that when he saw the block after the accident "it was bigger at the back edge than the front edge." Meyers also testified on cross-examination that the saw had blue spots on it. In the testimony of Pearl, he states that on the day before the accident he examined the saw and found some burnt spots on it that millmen call "thickened." These defects, known to the servant in this instance, and drawn to the attention of the master, while undoubtedly dangerous, were not of such character as to cause the danger to be imminent or immediate, but were such as might be termed progressively dangerous. The witness Meyers testified that spots on a saw would not always indicate that the saw was out of condition.

The witness Pearl on direct examination testified as follows:

Q. Ever had any experience in using a ripsaw that was burnt or thickened as this saw was on the day before this accident? A. I have.

Q. You have? A. Yes, sir; had experience.

Q. You may state what you have observed as to the use of that kind of a saw in —— A. Well, when those saws are in shape, running right, they are just as good, I suppose, as any, for a while anyway.

Defendant's witness Pierson, in response to questions from counsel for appellant, testified:

Q. Mr. Pierson, are you acquainted with the condition of ripsaws known as cupped or dished? A. Yes, sir.

Q. What does that mean, Mr. Pierson? A. Well, the tension of the spring is out of it, and it won't stand up to the work; it needs hammering.

Q. It is saucer shaped? A. The tension is out of the saw; it does not run true; you have to put a straight edge, a little steel edge on it to see—to find where it needs pounding or hammering. I am not a hammerman.

Q. Do you know what effects spots upon the saw—of the saw being dished—would have upon the safety of using that saw in that condition? A. Well, it would, of course, it should be hammered, and it becomes heated and kinked then with less provocation than a saw that was not dished or had been spotted, as they say.

Bearing upon the same subject, the witness Pierson testified:

Q. Have you had experience sawing with spotted saws, saws that were dished? A. Yes, sir; I have sawed with them that were in bad shape.

Q. Have you seen saws operated in that condition? A. Yes, sir; I have seen them operated and also sawed with them—that is, started to.

From this and other evidence produced at the trial it was for the jury to say whether the danger was so imminent and immediate that the respondent, as a reasonably prudent man, should have refused to continue in the service after a promise of repair had been made by the master. It cannot be said that, because the respondent knew that the machinery was getting dangerous or was defective and because the accident did happen, as a matter of law and a matter of fact the danger was immediate and imminent, or was such as would cause a reasonably prudent man to apprehend immediate danger. (*Taylor* v. *N. C. O. Ry. Co.*, 26 Nev. 415.)

The testimony in this case discloses that the respondent used the saw about three times between the time on which the master mechanic promised to repair and the accident. The time in which a servant may reasonably continue in the service after drawing a defect or a danger to the attention of the master is one that must be governed by the attending circumstances. The nature of the defect, its imminence to danger, the probability of danger occurring, and the experience of the servant—these elements, together with every other attending fact and circumstance, are the things that will determine as to whether or not a servant, acting as a prudent man, should refuse to continue in the service after a promise to repair, without assuming the risk. Where the evidence presenting

these conditions is conflicting, the verdict of the jury in favor of the plaintiff will not be disturbed by a reviewing court. This has been the policy of this court and has been the policy in nearly all jurisdictions in cases of this character. (*Taylor* v. *N. C. O. Ry. Co.*, 26 Nev. 415.)

**21.** It is contended by appellant that respondent was the cause of his own injuries in failing to keep the saw, with which he was operating, filed and set. As to whether or not it was the duty of respondent to set and file the saws used by him, the testimony is decidedly conflicting. Mr. Meyers, the master mechanic in charge at the time of the accident, testified that it was the duty of respondent to set and file the saws that he operated. This is contradicted by respondent in his testimony, and also by witness Webber; but there are salient features in the testimony of Meyers from which we think the jury might have believed that the testimony of the respondent in that respect was correct. Meyers, in answering interrogatories relative to the events that transpired after the accident, testified that the saw had to be gummed out and needed filing and setting, and, with reference to Mr. Webber having taken the respondent's place after the accident and having complained of the condition of the saw, said: "I came through the mill, which I did about once in thirty minutes—this Mr. Webber claimed to be a millman, and he was trying to get a piece through the saw, and he told me that no man could use a saw like that, dull, and no set in it, and I told him I would go and get it filed and set."

Taking this statement, together with the testimony of Webber and Konig, the jury could reasonably have arrived at two conclusions: That the equipment and implements for filing and setting were not at hand, or that it was not the duty of the operator to file and set his saws. If it was regularly the duty of the operator to file and set his own saws, there would have been no necessity for Meyers "to go and get it filed and set." Webber had been placed in respondent's position at the saw after the accident; Webber was supposed to be a millman; he was so recognized by the master mechanic to such an extent that he

was placed in charge of that saw. It must be assumed in this respect that Webber took the position of the respondent after the accident; he would not only perform the same service, but would be imposed with the same duties.

Further questions and answers propounded to Mr. Meyers are suggestive of the same conclusion:

Q. It is not true then, at all, Mr. Meyers, and you are positive it is not true, that it was your duty, and that you had to look after, and had given directions about, the making of repairs up to the time Mr. Konig was injured? A. I did; certainly I did.

Q. And it was your duty to do it? A. Sure.

He later testified:

Q. After Mr. Konig was hurt, this saw was continued to be used under your directions? A. Yes, sir.

Q. And used some time before it was taken to the Nevada Planing Mill and put in proper repair? A. It was not out of repair; it was in good condition outside of it being dull, and I took it to the Nevada Mill.

Relative to the equipment kept in the shops of the defendant for setting saws, the witness Meyers, on cross-examination, testified as follows:

Q. Did you ever see the machines they use for setting saws? A. I have seen quite a few and made quite a few.

Q. Did you have any machine of that kind in the shops at that time? A. No, sir.

He later stated on cross-examination that the only equipment kept for that purpose was a short piece of railroad iron. He further stated in his testimony on cross-examination that he put Mr. Webber in charge of all the machinery.

The witness Pearl, on cross-examination, and in response to interrogatories propounded by counsel for appellant, testified: "That usually when saws needed repairing they were taken to the Nevada Planing Mill."

From all these statements, together with the positive testimony of the respondent, the jury might reasonably conclude that according to the custom followed by appellant it was not the duty of respondent to file or set saws

with which he operated, and hence from all the evidence it is to be presumed that they found that the respondent was not responsible for the condition of the saw in any respect. The conflicting nature of the testimony on this particular phase of the case precludes this court from in any wise interfering with what we believe to be the jury's conclusion.

22. In the case under consideration, whatever may have been the master's duty or obligation toward keeping the implements in proper condition prior to the time at which the defect was drawn to the attention of the master mechanic, they could not have avoided their obligation to repair the defect after their attention had been so drawn. The courts generally, and the text-writers as well, have looked with disfavor upon any attempt of the master to create or impose between himself and the servant any rule claiming to operate as a contract against the negligence and dereliction of the master. It has been well said that contracts of this nature, or rules of this general character, are nothing but an attempt to make laws under the guise of rules, and, so far as they are claimed to operate as a contract against the negligence and dereliction of the defendant, they are void as against public policy. (*Ault* v. *Nebraska Tel. Co.*, 82 Neb. 434, 118 N. W. 73, 130 Am. St. Rep. 659; *Consolidated Coal Co.* v. *Lundak*, 196 Ill. 594, 63 N. E. 1079; *O'Neil* v. *Lake Superior Iron Co.*, 63 Mich. 690, 30 N. W. 688; *Mo. Ry. Co.* v. *Wood*, 35 S. W. 879; *Roesner* v. *Hermann*, 8 Fed. 782; *Lake Shore R. Co.* v. *Spangler*, 44 Ohio St. 471, 8 N. E. 467, 58 Am. Rep. 833; *Little Rock Ry. Co.* v. *Eubanks*, 48 Ark. 460, 3 S. W. 808, 3 Am. St. Rep. 245; *Willis* v. *Grand Trunk Ry. Co.*, 62 Me. 488.)

In considering the question of assumed risk, we think it well to consider what might be termed, and in fact has been termed, an "exception" to the rule, and yet we think "exception" scarcely covers, for the reason that it is more of a modification to the rule than an exception. There are instances where if an employee continues in the employment of the master with knowledge of any special or extraordinary risks attending his employment, or if

there is risk attendant on his employment, so obvious and imminent that serious injury may probably result from a continuance of the work, then the doctrine that the employee can proceed, relying upon the promise to repair, does not apply. This modification, if we may so term it, is supported by good reasoning, among which is that it is not consistent with reasonable prudence for one to submit himself voluntarily to imminent danger or probable immediate serious injury, relying upon a mere promise on the part of anybody that such danger will be removed after a time; and further that when such danger exists there is no such thing as a reasonable time to repair, other than immediate, and before the work proceeds further. If the service cannot be continued without constant, immediate, and imminent danger, and the danger and its character are fully known to the employee, he assumes the risk, if he continues in the employment regardless of the promise of the master. Where an employee, with experience sufficient to give knowledge of the nature of the implements with which he operates, voluntarily incurs a known, imminent, and immediate danger, he cannot free himself from his own negligence by a plea of the master's promise to repair.

One of the most striking examples of the application of this rule we find in the case of *Erdman* v. *Illinois Steel Co.*, 95 Wis. 6, 69 N. W. 993, 60 Am. St. Rep. 66. This case is so analogous to the one under consideration that we deem it worthy of contrast and comparison. Erdman's duties consisted in assisting in the operation of sawing and shearing heated bars and plates of iron by the use of a circular saw four feet in diameter, set in a frame. On the day on which he was injured, before commencing work the attention of the foreman was called to the fact that the saw was cracked and defective. Erdman, who had fourteen years' experience in such work, knew of the defect and asked the foreman if he could change the saw. The foreman replied, "No, you will have to work one heat with it." Erdman, apparently apprehensive of danger, directed that the saw should be let down on the

iron with great care on account of its condition.    Shortly after commencing work the saw broke, and the shaft upon which it ran left its bearings, and fragments of the saw and the shaft struck the plaintiff Erdman upon the body, causing severe injury.

The Supreme Court of Wisconsin, in reviewing the Erdman case, contrasted it with other cases in which that court had held that the servant could rely upon the promise of the master, for a reasonable time, without assuming the risk, and after reasserting the general proposition that when an employee notifies a master of a special risk and objects to continuing the work under the existing conditions and is induced to continue such work by a promise to remove the danger within a reasonable time, then for such time the employee is not presumed to assume the risk.    This doctrine, they say, is by no means without limitations: "If the risk is so obvious and immediate that serious injury may probably result from a continuance of the work, then the doctrine that the employee can proceed, relying upon the promise to repair or to remove the danger, does not apply.    *    *    * A person 35 years of age, with fourteen years' experience with machinery, circumstanced as plaintiff was, must be presumed to know the operation of natural laws and the dangers, which such a defect as the one in question would naturally suggest to a person of ordinary intelligence.    *    *    *    It does not require an expert, even, to understand that a saw four feet in diameter, running at a speed of 1,700 revolutions a minute, cracked three inches from the outside, when let down upon a large iron plate or bar and operated with sufficient force to cut it in two, is in danger of flying to pieces and seriously injuring all who may be in the vicinity.    That a person of plaintiff's experience with such a machine did not know of such danger is beyond comprehension.    It was negligence to the point of recklessness to work with such a defective saw at all under the circumstances.    That brings the case clearly within the exception to the rule that a protest by the employee to continuing in the

employ of the master because of the existence of some special risk attending it, a promise by the employer to remove the danger within a reasonable time, and a continuance in such employment under consideration of such promise, relieves such employee from the charge of contributory negligence, if injured because of said danger within such time."

It may be well to contrast the circumstances of the Erdman case, *supra*, with that of the case under consideration. In the former case the saw four feet in diameter was being operated in cutting iron bars and plates; it was found to be cracked, the crack running some three inches from the circumference. There, by reason of the nature of the work, there was obviously imminent and immediate and constant danger of the saw being broken. In the case under consideration, the saw was being operated in an entirely different manner, under different conditions; the defects, to wit, the kinking or cupping of the saw, were not such as in our judgment would cause a person to apprehend immediate results, although they were such as, if unrepaired, might in time bring about dangerous results. They were defects which would increase by constant use and to that extent would become progressively dangerous. While the Erdman case, *supra*, is perhaps most striking in the application of the modification or exception to the rule of assumed risk, we find the same rule laid down under somewhat similar circumstances in other cases. (*Crookston Lumber Co.* v. *Boutin*, 149 Fed. 680, 79 C. C. A. 368; *Shea* v. *Seattle Lumber Co.*, 47 Wash. 70, 91 Pac. 623; *Reiser* v. *So. Planing Mill Co.*, 69 S. W. 1085.) But, on a careful reading of all of these cases, where there has been an application of an exception to the general rule of assumed risk, the circumstances of the particular cases set forth conditions where the danger was imminent, immediate and obvious.

We think the evidence in the case under consideration tends to show that both the appellant and the respondent thought the danger was not so great nor so imminent that the use of the implement should be discontinued, and, even though the defect in the saw was present, it

was a fair question for the jury as to whether the risk
of an accident was so great or imminent that a reason-
ably prudent person would have continued to work.
(*Dowd* v. *Erie R. Co.*, 70 N. J. Law, 451, 57 Atl. 248;
*Dunkerley* v. *Webendorfer Mach. Co.*, 71 N. J. Law, 60, 58
Atl. 94.)

Referring to appellant's assignments Nos. 27, 29, and
32, wherein it assigns error to the trial court in sustain-
ing respondent's objections to the questions propounded
to witness C. J. Pierson, we think, in view of the form of
the questions, and more particularly in view of the issues
involved by reason of the peculiar pleadings of the
defendant, there was no error committed by the trial
court in sustaining those objections. Pierson was a
witness for the defendant, and by the interrogatories
propounded to him to which objections were made, and
which objections were sustained by the court, the defend-
ant was attempting to establish a defense of contributory
negligence. This it was precluded from doing by reason
of the nature of its own pleadings, in that the defendant
had failed to plead a defense of contributory negligence.

**23.** With reference to appellant's assignments Nos. 33,
35, 36, 38, 41, and 42, wherein appellant assigns error to
the trial court for having sustained the objections to sev-
eral questions propounded to defendant's witness E. A.
Burns, we think in view of the issues raised and in view
of the fact that no defense of contributory negligence
was pleaded by the defendant, the court did not err
in sustaining the objections raised to the several ques-
tions propounded to defendant's witness. These inter-
rogatories were further objectionable in view of the fact
that they sought to have the witness testify to inferences
and conclusions as to danger or safety, and these were
matters which were for the jury alone. It would have
been proper for the witness to have testified as to the
condition of the saw, of the circumstances which came
under his observation, but it was for the jury to draw
inferences and conclusions as to the danger or safety.
(*Detzur* v. *Stroh Brewing Co.*, 119 Mich. 282, 77 N. W.
948, 44 L. R. A. 500.)

The trial judge, in passing upon the objection raised by respondent in the lower court, and addressing himself to Mr. Barry, attorney for appellant, said: "I will go this far with you, Mr. Barry: I will let you show that the saw was not properly operated on this day." It might be contended that the court was drawing very close lines on the defendant, but in view of the pleadings we think that the court properly stated the limits to which the defendant was entitled to go by way of affirmative proof; there being no issue of contributory negligence raised by the answer of the defendant.

**24.** The questions propounded by counsel for defendant to its witnesses Burns and Pierson sought to elicit testimony bearing upon the question as to what others would do or have done under similar conditions, with a view of establishing whether respondent performed his duty with such lack of care or degree of negligence as contributed to bring about the accident. These questions were objectionable, and the objections interposed to them were properly sustained for the reason that what others did or might do, or were in the habit of doing under like conditions, did not tend to prove the plaintiff's contributory negligence, even assuming that contributory negligence was an issue in this case. What others might have done under like conditions would not prove or tend to prove what the respondent should have done, nor would it to any degree establish his lack of care. (*Union Wire Mattress Co.* v. *Wiegref,* 133 Ill. App. 506; *Temperance Hall Association* v. *Giles,* 33 N. J. Law, 260; *Hinckley* v. *Barnstable,* 109 Mass. 126; *Crocker* v. *Schureman,* 7 Mo. App. 358).

**25.** Counsel for appellant very ably argue that in the light of the testimony given at the trial it was a physical impossibility for the accident to have happened in the manner in which it is claimed to have happened. In this respect the record discloses no eye-witness to the accident, save and except the plaintiff himself, and from his testimony, and the manner in which it is given, and the

peculiar way in which he answers the questions, it is manifest, and must have been manifest to the jury, that the plaintiff is an illiterate man, unable to explain situations and circumstances, a foreigner by birth, and with but a limited vocabulary of English. This is apparent from many of his answers in which the words used convey but little sense or meaning, so far as the record discloses. He alone could describe the way or manner in which the accident occurred; his description, together with the evidence of other witnesses as to what they saw and observed immediately after the accident, was in our mind sufficient to warrant the jury in believing that the accident occurred in the manner which the plaintiff alleges.

That there were defects in the saw, which defects are usually caused or brought about from the metal losing its tension, was fairly well established by the evidence, and that when a circular saw becomes cupped or thickened it runs untrue and wabbles was testified to by witnesses both for appellant and respondent. The witness Pearl, having testified that he was accustomed to the use of circular saws, also testified that, where necessity requires, an operator may continue to use a saw after it is cupped or thickened. He states, further, that the very saw in question had been used by Webber after the accident had occurred to the plaintiff. If the saw was cupped and thickened, then it was a question for the jury as to whether or not its condition caused the accident. The plaintiff was not obliged to cover all doubt as to the cause of the accident, but was bound only to show, by a fair preponderance of the evidence, that the cause was one for which the defendant was or could be found to be liable. There seems to be no other cause, in so far as the record discloses, which the jury could have regarded so adequate to explain the accident as that related by the plaintiff, in view of the fact that the condition of the saw, as testified to by plaintiff, was borne out by the testimony of Webber and Pearl, and by

the testimony of Meyers on cross-examination. Moreover the physical appearance of the block after the accident, as described by the witness Meyers, bears out the testimony of the respondent as to the manner in which the accident occurred. (*Pickquett* v. *Wellington Wild Coal Co.*, 200 Mass. 470, 86 N. E. 899.)

Moreover, it was a warrantable inference for the jury to arrive at, in view of the fact that a cause was shown which might produce an accident of that particular character, and it is especially true in the absence of a showing of other causes. The showing was such, in our judgment, as warranted the jury in inferring that the cause alleged was the operative agency in bringing about the result, and hence their determination in that respect should not be disturbed. (*Rase* v. *Minneapolis, St. P. & S. S. M. Ry.*, 107 Minn. 260, 120 N. W. 360, 21 L. R. A. n.s. 138; *Lunde* v. *Cudahy Packing Co.*, 139 Iowa, 688, 117 N. W. 1063; *Bolen-Darnall Coal Co.* v. *Williams*, 164 Fed. 669, 90 C. C. A. 481; *Miller* v. *Kimberly-Clark Co.*, 137 Wis. 138, 118 N. W. 538; *Swick* v. *Ætna Co.*, 147 Mich. 454, 111 N. W. 113.)

**26, 27.** Appellant charges error in plaintiff's instruction No. 1, wherein the court charged the jury as follows: "* * * The jury is further instructed that, as a consequence of such employment, it was the duty of the said corporation to use due care in providing the plaintiff with safe machinery and with a safe ripsaw, and in keeping and maintaining the said machinery or ripsaw in such condition as to be reasonably and adequately safe for use by the plaintiff."

The appellant contends that this instruction does not correctly charge the measure of the master's duty; the true rule being to exercise reasonable care to furnish a reasonably safe place in which to work, and reasonably safe appliances with which to work, and to maintain this condition. Appellant's contention in this respect is correct. We think, however, that this was properly stated in the latter part of the instruction, wherein "reasonably and adequately safe" are used by the court. Moreover,

the entire subject-matter as to the measure of the master's duty was covered by defendant's instruction No. 2, given by the court, in which the court instructed: "The master is not required to use more than ordinary care and diligence for the protection of his servants. The master is not bound to provide the very best materials, implements, or accommodations which can be procured, nor those which are absolutely the most convenient or most safe. His duty is sufficiently discharged by providing those which are reasonably safe and fit.   *   *   *   The master performs his whole duty by using as much care in furnishing instrumentalities for the use of his servants as a man of ordinary prudence in the same line of business, acting with a prudent regard for his own safety would do in supplying similar things for himself, if he were doing the work.   *   *   *"

An instruction similarly framed was given by the trial court in the case of *Christensen* v. *Floriston Pulp and Paper Co.*, 29 Nev. 567, and this court, in reviewing the case, held that there was no error in the instruction in view of the circumstances of the case. Moreover, we think that the defects in this instruction were met and overcome by defendant's instruction No. 1, dwelling upon the same subject.

The same reasoning applies to appellant's assignment of error applicable to plaintiff's instruction No. 4.

**28, 29.** Appellant assigns error in giving the plaintiff's instruction No. 4a, which reads as follows: "The jury is instructed that, if the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care until he makes his assurances good. However, the assurances remove all ground for the argument that the servant by continuing in the employment engages to assume the risks."

The latter part of this instruction is entirely too narrow in its presentation of the law. First, it fails to take into

consideration the period of time during which the servant may reasonably rely on the promise to repair; secondly, it fails to even make mention of the duty of the servant under conditions where he finds that he is working with defective implements, from which an accident is liable to occur. These criticisms, however, we think are met and overcome by the amendment to plaintiff's instruction No. 2, setting forth that under such conditions the servant may continue in the service without assuming the risk, providing the danger is not of so imminent a character that a person of ordinary prudence would refuse to continue in the service. It is further met by plaintiff's instruction No. 3, wherein the court charged the jury and instructed that, where a master has expressly promised to repair a defect, the servant can recover for the injury occurring by reason of such defect within such period of time after the promise as it would be reasonable to allow for its performance, and for an injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept.

The defect complained of in plaintiff's instruction No. 4a is further met, we think, and cured by defendant's instructions numbered 3, 9, 11, and 13, in which instructions the court laid down the proper rule applicable to a master's promise to repair. Speaking upon this subject, the Supreme Court of Indiana, in the case of *McFarlan Carriage Co.* v. *Potter*, 153 Ind. 107, 53 N. E. 465, said: "A promise to repair is confession to a breach of duty, and when a master, to right himself, requests and induces a postponement, either for convenience or profit, no principle of justice will lay the burden of delay upon the unoffending servant. The whole question is bottomed upon the wrong of the master, and it is sophistry to argue that the servant, by confiding in the master's promise, for a reasonable time in which to clear the defect, clearly * * * waived the master's duty to him, and assumed the additional risk himself."

**30.** We think that plaintiff's instruction No. 4b, with the amendment made to it by the court, contains no element of error, and was a fair statement of the law. It

was especially so in view of the fact that the latter part of the instruction very properly stated: "That it is the function and the duty of the jury to determine from the evidence and evidentiary circumstances in this case whether the defect in the saw, if any existed, was such that none but a reckless millman, careless of his safety, would have operated the saw in question, without the same first being repaired." Appellant especially takes exception to the word "reckless" used in the instruction of which the foregoing is a quotation. The court might well have used either the word "heedless," "careless," or "indifferent" in place of the word "reckless," with the same force and effect.

**31.** Plaintiff's instruction No. 4c was as follows: "The jury is further instructed that where the defendant relies upon the defense that the plaintiff assumed the risk, by reason of the ripsaw being so imminently and immediately dangerous that a reasonably prudent person, situated as the plaintiff was, would not have used the same, is an affirmative defense, and the burden of establishing the same, by a preponderance of the evidence, rests upon the defendant."

Without dwelling upon the grammatical construction of this instruction, we believe that it was a fair attempt to fairly state the rule. Appellant comments upon this instruction in its assignments, and we admit that the court might properly have gone further had it seen fit, and might have stated that, if it appeared from the evidence that the plaintiff was the proximate cause of his own injuries, and had so conducted himself as to assume the risk, the defendant was entitled to take advantage of that fact. Under the circumstances of this case, however, it is our opinion that the instruction as given was sufficient in so far as it went. This we think is especially true in view of the fact that the defendant by its own act had precluded itself from the defense of contributory negligence or assumed risk or proximate cause, save and except so far as these elements might appear from the plaintiff's case. In its assignment of error, in connection with this instruction, appellant refers to its offer of the

testimony of Pierson, Burns, Gardner and Meyers; but as we have already dwelt upon this subject it is not necessary to again comment upon it. Suffice it to say that the testimony sought to be elicited from the witnesses was not admissible under the pleadings interposed by the defendant in this case.

**32.** Plaintiff's instruction No. 5 is assigned as being erroneous; but in our judgment there was nothing in this instruction that would be to any degree misleading. The court had the right to fix the limit at which damages could be assessed at the amount sued for by the plaintiff.

This identical matter was passed upon by this court in the case of *Cutler* v. *Pittsburg Silver Peak G. M. Co.*, 34 Nev. 51, and in that case the court, speaking through Mr. Chief Justice Sweeney, said: "As we construe the plain and unambiguous language at the end of the instruction, viz,'that it is your duty to find a verdict for the plaintiff in a sum not greater than $15,000,' the jury was in no way obligated to find a verdict in this specific amount; but, as specifically stated in the instruction, if the jury find from the evidence the elements making the defendants liable in damages previously stated in the instruction to be true, then it is their duty to find a verdict they may believe proper, ranging from one cent to the limit of $15,000, but no more. It plainly appears from the instruction excepted to that the premises therein stated all the elements which, if true, would warrant the finding of a verdict for the plaintiff, and legally it would then become the duty of the jury to render a verdict in such amount of damages as they believed to be just and proper under the evidence and instructions of the court. We believe the court very properly stated to the jury the maximum damages they might be allowed to assess, if they found the evidence such that the plaintiff was entitled to a judgment."

The reasoning set forth in the Cutler case, *supra*, in our judgment applied equally to the instruction complained of by appellant in this case.

**33, 34.** Appellant assigns as error plaintiff's instruction No. 6, which is as follows: "The jury is further instructed

that the mere facts that prior to the injury the said ripsaw used by the plaintiff was in a defective condition, and that the same was known to the plaintiff up to and including the time of the injury, and that the plaintiff was actually injured as a result of said defective condition, standing alone, do not in themselves establish the fact that at the time of the injury the said ripsaw used by the plaintiff was so openly and obviously dangerous on account of said defects that a reasonably prudent person would not have used the same."

This instruction, we think, is not objectionable from a standpoint of a misstatement of the law.    The rule upon which the court sought to instruct the jury is one that is generally accepted, and has received the sanction of this court in the case of *Taylor* v. *N. C. O. Ry. Co.*, 26 Nev. 428, wherein the court said: "It will not do to say that, because respondent knew the machinery was getting dangerous, and because the accident did happen, as a matter of law, and a matter of fact, the danger was immediate and imminent.    To so hold would absolutely destroy the legal effect of the master's promise under the rule stated."

We think this instruction is not subject to the objection insisted upon by appellant that the court in giving the instruction assumed the facts therein stated to have been proven or admitted.    It would have been better, perhaps, had the court stated the instruction in another way; but we think there was nothing in the instruction to mislead the jury.    This is especially true in view of the fact that in defendant's instruction No. 13 the same subject-matter was covered, and again in defendant's instructions numbered 3 and 9 the subject was so dwelt upon that the defendant could not have been prejudiced by reason of the manner in which the court gave the instruction numbered 6.

**35.** Appellant assigns as error plaintiff's requested instruction No. 7.    We think this instruction was not subject to the objection interposed to it by appellant. At the very beginning of the instruction the court advised the jury that they were at liberty and should

take into consideration all of the facts and circumstances surrounding the testimony of the witnesses in determining the weight, credit, and value that was to be given testimony.   At the conclusion of the instruction, the court advised as follows: "The fact, if it be a fact, that such statements of witnesses are contradicted by other witnesses, you will give to the testimony only such credit as you may believe it to be entitled to under all of the circumstances detailed in evidence, and, if you believe that any witness has wilfully sworn falsely to any material fact, you are at liberty to disregard the whole or any part of such witness's testimony, except in so far as the same is corroborated by some other credible witness or witnesses."   This latter part of the instruction as quoted should also have taken into account the elements of circumstantial evidence, or the circumstantial features of the case, as it is termed by appellant; but, in view of the fact that the first part of the instruction took these elements into consideration, and properly advised the jury with reference to them, we think the appellant was not prejudiced by the instruction as a whole.

**36-38.**   The appellant assigns error in the giving of plaintiff's instruction No. 9, which instruction was as follows: "The court further instructs the jury that the term 'negligence,' as used in these instructions, imports the want of such attention to the nature or the probable consequence of any act or omission, as a reasonably prudent man ordinarily bestows in acting in his concerns of like importance; while ordinary care is such care as a person of ordinary prudence usually exercises about his own affairs of ordinary importance.   With these definitions well in mind, you will determine the question as to whether the defendant was negligent in providing for the safety of its employee, the plaintiff, and also whether the plaintiff exercised that degree of care for his safety which, under the circumstances, he ought to have exercised.   The court further instructs the jury that by the risks incident to the employment is meant such risks as exist after the master has performed his full duty to his servant in furnishing instrumentalities,

machinery, and appliances reasonably safe for the purpose
for which it was intended, and this includes keeping the
same in reasonably safe repair.  And, in this connection,
you are instructed that by the assumption of risk inci-
dent to the employment is not meant any additional
or extra hazard to the employee, occasioned by the negli-
gence of the master in failing to keep his tools, machinery,
and appliances in reasonably safe repair."

In this instruction it will be observed that the court
sought to give a definition for "negligence" and for
"ordinary care."  Both definitions, as given by the court,
could have been differently worded; but we see nothing
about either of them that would tend to mislead the jury
or to prejudice the appellant.  Appellant in its brief
says: "Let it be admitted for argument's sake only that
the injury to plaintiff was the consequence of the omis-
sion of defendant to repair the saw, then the want of
attention to the consequences, viz, the plaintiff's injuries,
constituted negligence under this definition, and no such
case is presented by the pleadings."

The definition of negligence given by the court in this
instruction was not subject to such distortion of reason-
ing as that set out by appellant.  The definition of neg-
ligence, as given by the court, summed up in few words
means a disregard for probable consequences.

The court's definition of "ordinary care," as given in
this instruction, was correct in the abstract.  In the latter
part of the instruction the court sought to define risks
incident to the employment.  While we are inclined to
believe that this instruction was extremely limited in its
attempt to define the three elements important to the
case, and while we do not sanction the definition, as set
forth in this instruction, as being the best that could be
given, yet we believe that the jury was in no wise mis-
led, and, in view of other instructions given by the court
touching the same subject-matter, we think the appellant
was in no wise injured by this one.

Appellant complains of the failure of the court to give
defendant's offered instruction No. 6, and in its brief
appellant states that the jury might well have found that

the plaintiff simply protested against the use of the saw, and that no promise to repair was made, and if so the instruction was correct. There was nothing in the evidence to warrant any inference of this kind. The record discloses the positive statement on the part of the plaintiff relative to his drawing the attention of the master to the defect, and a positive statement on the part of Meyers, the master mechanic, denying that the plaintiff ever complained of the saw or mentioned the defect to him. There was no middle ground to which defendant's refused instruction numbered 6 could properly apply.

**39.** It was not error to refuse defendant's offered instruction numbered 7, the subject-matter sought to be touched upon in defendant's refused instruction No. 7 having been very properly covered by the defendant's instruction numbered 13, and in the latter instruction the correct rule was stated.

Defendant's instruction numbered 8, refused by the trial court, dealt with the question of contributory negligence the same as if it had been set up as a defense by the appellant in this case. We have already dwelt upon that subject at length, and our opinion is that it was not error for the court to refuse this and similar instructions.

**40.** The same reasoning applies to defendant's refused instruction No. 12. Assumed risk, like contributory negligence, if relied upon at all by defendants in a case of this character, must be especially pleaded.

Our opinion and reasoning as applied to defendant's refused instructions numbered 8 and 12 applies equally to defendant's refused instructions numbered 14, 17, and 18. These instructions, bearing upon the question of contributory negligence, assumed risk, and proximate cause, were properly refused in the manner in which they were offered, in view of the fact that there was no plea on the part of the defendant involving these special defenses.

The contentions of appellant are ably presented in its brief, and many of the authorities would bear out its theory, if the primary conditions of the case were analogous to those cited; but appellant at the very

outset assumed a false premise in declaring that the defense of contributory negligence is interposed by the answer, and its entire brief and argument is poised on this erroneous assumption, and hence as to the assignments heretofore considered they cannot prevail.

**41.** Appellant contends that the judgment in this case is so excessive as to clearly indicate the existence of passion or prejudice on the part of the jury. It will be observed that in this case the plaintiff was a man some 58 or 59 years of age at the time of the injury. According to the testimony of the physician, who had been a family physician to some extent in years past, and according to the testimony of the plaintiff himself, his life had been marked by instances of illness of more or less severity; he had suffered from malarial fever to some extent; he had endured an attack of pneumonia; he had been treated for what was termed cerebro-spinal fever, verging on cerebro-spinal meningitis. These afflictions might or might not materially affect his expectancy of life.

The testimony is undisputed that it was the appellant's regularly employed physician, Dr. Morrison, who waited on the respondent after the injuries, and who officiated at the operation performed on the respondent in the hospital, and who must necessarily have been cognizant of the nature and extent of the injuries and physical condition of the respondent. Notwithstanding this, however, Dr. Morrison was not called upon to testify, and, in the absence of his testimony, the testimony of Dr. Hershiser, the respondent's physician, stands alone and unmodified. From his testimony we gather that it was his opinion that a man in the condition of life of the plaintiff before the accident could perform labor for at least ten years longer. From the record of his testimony the nature, seriousness, extent, and effect of respondent's injuries are set forth, also his physical condition after the accident as compared with his condition prior to the accident. His normal expectancy would be in the neighborhood of fourteen years; but it is not to be presumed that in the latter years of his life a man, who had been

subjected to hard toil more or less during his lifetime, and who had been subjected to the weakening effects of maladies, would be capable of performing labor such as that imposed upon the plaintiff at the time of his injury for the period of his normal expectancy.

At the time of the injury and for a long time prior thereto, so far as we are advised from the record, the plaintiff had been earning between $80 and $90 per month. From his earnings he was supporting a wife and eight children. Assuming that the physician's estimate was fairly correct, wherein he stated that the plaintiff could perform labor for at least ten years longer, we may infer that he could earn and could have contributed to the family dependent upon him in the neighborhood of $10,000.

We are inclined to believe that the damages assessed by the jury in this case were excessive, in view of the circumstances of the case, and in view of the condition, age, and circumstances of the plaintiff. While the evidence in this case discloses that the injuries sustained by the respondent were of a severe and painful nature, permanently affecting one side of his body, and depriving him of the use of one arm, yet we are not satisfied that the respondent will be entirely deprived of the ability to enter into lines of employment involving less laborious tasks. In other words, it does not appear that the respondent is or will be entirely unable to contribute to his own support or to the support of his family.

In view of the foregoing reasoning, we are of the opinion that the order of the trial court denying defendant's motion for a new trial should be affirmed as to all the assignments of error made, except as to the error assigning the judgment to be excessive. For this latter error it is ordered that the judgment be reversed, and a new trial granted, unless the plaintiff, respondent herein, within thirty days after the receipt of a copy of this opinion and order from the clerk of this court, file in this court a written consent to a modification of the judgment to $10,000, in lieu of the judgment rendered against the defendant corporation.

In the event such written consent of plaintiff is filed in
this court within the time designated, assenting to the
reduction of said judgment to $10,000, it is ordered that
the judgment of the lower court be modified accordingly,
and that the judgment, as modified, and the order of the
lower court denying defendant's motion for a new trial
be affirmed, and that respondent be allowed his costs.

It is so ordered.